STATE of Iowa, Appellee,

v.

Kenneth L. KRAKLIO, Appellant.

No. 95–1875.

Supreme Court of Iowa.

Feb. 19, 1997.

Rehearing Denied March 26, 1997.

Linda Del Gallo, State Appellate Defender, and Kevin Cmelik, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and William E. Davis, County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

Defendant Kenneth Kraklio appeals the judgment and sentence imposed upon his convictions for three counts of securities fraud in violation of Iowa Code section 502.401 (1995). Kraklio seeks reversal on two grounds: (1) that the record contains insufficient evidence on each element of the crimes charged, and (2) his prior punishment for contempt of a court order involving two of the transactions prohibits his conviction here. Because substantial evidence supports the convictions for securities fraud, and no double jeopardy violation has been established, we affirm.

## I. Background Facts and Proceedings.

Kenneth Kraklio took part in a promotional scheme that involved filing multi-million dollar claims in a nonexistent lawsuit against the federal government. For $300 apiece, Kraklio agreed to help Iowans file claims that purportedly entitled them to "piggyback" onto a successful class action lawsuit in Colorado that had allegedly recovered damages based on the country's return to the gold standard. The claimants' recovery—which, on average, promised to exceed any loss several thousand times over—would be pegged to losses incurred for agricultural debts, consumer loans, mortgages, deaths of family members, inadequate education, and even damage to reputation for such inconveniences as speeding tickets or arrests.

In an action filed in Wayne County, Iowa, the attorney general secured an order enjoining Kraklio and others from engaging in deceptive practices amounting to consumer fraud in violation of Iowa Code section 714.16(2)(a). Meanwhile, in Scott County, Kraklio promised two undercover agents, posing as Steve and Marilyn Graham, that their multi-million dollar claims would be paid in ninety days when the Colorado law-

suit was settled. He also recruited the couple to sell claim forms under an agreement whereby they would earn fifty dollars out of every $300 and remit the balance to Kraklio. He gave similar information to another undercover investigator who gave him $300 on the promise his claim would be filed by Kraklio in Colorado the following weekend and compensation would be forthcoming without delay.

Kraklio was eventually found in contempt of court for violating the Wayne County injunction in the transaction involving the Grahams. He was sentenced to serve thirty days in jail and ordered to pay a $7500 fine. The State then filed a trial information in Scott County charging him with three counts of securities fraud in violation of Iowa Code section 502.401. Kraklio moved to dismiss, arguing the sale of claims in the lawsuit did not involve "securities" and, furthermore, his punishment for contempt in Wayne County barred any further prosecution for crimes involving the same transaction. The motions were overruled and the case proceeded to trial. A jury found Kraklio guilty as charged and this appeal followed.

## II. Scope of Review.

We review challenges to the sufficiency of evidence for errors at law. Iowa R.App. P. 4; *State v. Arnold*, 543 N.W.2d 600, 602 (Iowa 1996). Review of constitutional issues is de novo. *State v. Fox*, 491 N.W.2d 527, 530 (Iowa 1992).

## III. Sufficiency of the Evidence.

Kraklio contends the State's evidence did not establish the charged offense of securities fraud. In evaluating such a claim, we view the evidence in a light most favorable to upholding the jury's verdict. *Arnold*, 543 N.W.2d at 602. The verdict is binding on us unless the record contains no substantial evidence to support it. *Id.* Evidence is substantial if it could convince a rational trier of fact that the accused is guilty beyond a reasonable doubt. *State v. Predka*, 555 N.W.2d 202, 204 (Iowa 1996).

The Iowa Uniform Securities Act provides:

It is unlawful for any person, in connection with the offer to sell, offer to purchase, sale or purchase of any security in this state, directly or indirectly:

1. To employ any device, scheme, or artifice to defraud;

2. To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or

3. To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Iowa Code § 502.401.

The threshold question is whether Kraklio's transactions with the undercover agents involved a security. The term "security" is broadly defined by statute to include investment contracts. Iowa Code § 502.102(14). As one court has recently noted, the term "investment contracts" is included within the definition of security "to identify unconventional instruments that have the essential properties of a debt or equity security." *De Wit v. Firstar Corp.,* 879 F.Supp. 947, 977 (N.D.Iowa 1995).

A security's essential properties are traditionally measured by a test set forth in *SEC v. W.J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *See Corporate East Assoc. v. Meester,* 442 N.W.2d 105, 107 (Iowa 1989) (adopting *Howey* test). Under the *Howey* test, an investment contract is a security if it evidences (1) an investment, (2) in a common enterprise, (3) with a reasonable expectation of profits, (4) to be derived from the entrepreneurial or managerial efforts of others. *Id.; accord Reves v. Ernst & Young,* 494 U.S. 56, 64, 110 S.Ct. 945, 950, 108 L.Ed.2d 47, 59 (1990); *State v. Tyler,* 512 N.W.2d 552, 556 (Iowa 1994). In fashioning this test, the *Howey* Court recognized the need for a definition that is flexible, rather than static, "to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." *Howey,* 328 U.S. at 299, 66 S.Ct. at 1103, 90 L.Ed. at 1250.

Kraklio contends on appeal that the State failed to prove that the claims he marketed were investments; that the purchasers had a reasonable expectation of profit in the enterprise; or that any profit realized would be derived from his entrepreneurial or managerial efforts. We shall consider the arguments in turn.

A. *Investment.* The common meaning of the term "invest" is "to commit (money) in order to earn a financial return." Webster's Ninth New Collegiate Dictionary 636 (1986). In *Tyler,* where the defendant promised a $20,000 return on a $2000 loan to finance a worthless lawsuit, this court held the promissory note confirming the transaction "clearly evidences an investment." *Tyler,* 512 N.W.2d at 556. Here, Kraklio solicited $300 payments on the promise of a $14 *million* recovery. Although Kraklio characterizes the potential recovery as no more than "just compensation," a reasonable jury could find the transaction meets the common definition of investment.

B. *Expectation of Profit.* Kraklio's principal claim is that the absurdity of the lawsuit is so patently obvious, and the promise of recovery so outrageous, that no reasonable person could maintain an expectation of profit. The record reveals, however, that the gullibility of the average citizen should not be underestimated. Kraklio himself acknowledges in his brief that "[e]very person that the defense called in [this] case was of the firm belief that the money was going to come eventually." Indeed, thirty people attended the "tax seminar" held at a well-respected real estate office where Kraklio assisted them in filling out claim forms. As this court noted under similar circumstances in *Tyler,* a reasonable person with the limited information provided by the defendant could believe a profit was likely. Kraklio's argument to the contrary is without merit.

C. *Entrepreneurial or Managerial Efforts of Others.* Kraklio contends that each promised reward turned, not on his entrepreneurial skill, but on the governmental "injuries" suffered by each claimant. Thus he believes the State failed as a matter of law on the management prong of the *Howey* test. A reasonable jury could find, however, that

Kraklio's efforts were key to the success of this scheme. He held himself out as having the education and experience to complete and process the claim forms, obtainable only from him. Only through his expertise could prospective investors partake in the profits available to those who paid their $300.

Kraklio's appeal suggests that it strains credulity to apply legal principles developed for commerce to outlandish facts tinged with anti-government paranoia. In *Tyler,* however, this court embraced a broad definition of "security." As in *Tyler,* the end sought to be remedied here is the same one addressed in *Howey* half a century ago—promoters enticing investors to commit their resources on the promise of a big return. The investors have neither the desire nor the expertise to manage the investment themselves. "[T]hey are attracted solely by the prospects of a return on their investment." *Howey,* 328 U.S. at 300, 66 S.Ct. at 1103, 90 L.Ed. at 1250. The district court made no mistake in submitting the case to the jury on the facts before it and in accordance with the standards set by *Tyler* and *Howey.* No ground for reversal appears.

## IV. *Double Jeopardy Claim.*

In the Wayne County action, Kraklio was permanently enjoined from "collecting any fees whatsoever under the pretense of obtaining damages for Iowa consumers, purportedly through a federal class action lawsuit." The injunction was premised on Kraklio's alleged violation of Iowa's consumer fraud statute, section 714.16(2)(a). The statute prohibits unfair or fraudulent practices "in connection with the lease, sale, or advertisement of any merchandise or the solicitation of contributions for charitable purposes...." Iowa Code § 714.16(2)(a).

■ Kraklio argues on appeal that the court's finding that he contemptuously violated the restraining order necessarily included findings on the elements of securities fraud under Iowa Code section 502.402. Thus, he claims, he has been prosecuted and punished twice for the same offense in violation of the Double Jeopardy Clause. *See* U.S. Const. amend. V (no person shall "be subject for the same offence to be twice put in jeopardy of life or limb"); *State v. Aguiar–Corona,* 508 N.W.2d 698, 701 (Iowa 1993). The clause applies in non-summary criminal contempt prosecutions just as in other criminal prosecutions. *United States v. Dixon,* 509 U.S. 688, 696–97, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 568 (1993).

■ The State counters—and the district court ruled—that Kraklio's contempt and criminal violations are not the "same offense" for purposes of double jeopardy analysis. The test for determining whether two offenses are the same is whether "[e]ach of the offenses created requires proof of a different element." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309 (1932).

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Id.*

As one court has aptly noted, the *Blockburger* test is easily stated, but not so easily applied. *United States v. Bennett,* 44 F.3d 1364, 1374 (8th Cir.1995). The difficulty was demonstrated in *Dixon,* where a divided Supreme Court announced its views in five separate opinions. In *Dixon,* as here, the dispute over application of double jeopardy principles arose in consolidated cases where defendants were tried for violating court orders that prohibited them from engaging in conduct that later formed the basis for criminal prosecutions. A majority of the justices voted to overrule *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), a case which had expanded *Blockburger* by adding a "same-conduct" test which had to be overcome in order to avoid the double jeopardy bar for subsequent conviction. *Dixon,* 509 U.S. at 703–05, 113 S.Ct. at 2860, 125 L.Ed.2d at 573; *State v. Johnson,* 676 So.2d 408, 410 (Fla.1996). Those same justices, however, disagreed as to the effect of restoring the *Blockburger* elements test. The divisive question became which elements to compare. A plurality favored comparing

the elements of the criminal offense underlying the contempt action with the elements of the subsequent crime being prosecuted. In its words, "the underlying substantive criminal offense is 'a species of lesser-included offense.'" *Dixon*, 509 U.S. at 698, 113 S.Ct. at 2857, 125 L.Ed.2d at 569 (quoting *Illinois v. Vitale*, 447 U.S. 410, 420, 100 S.Ct. 2260, 2267, 65 L.Ed.2d 228, 238 (1980)).

Three other justices endorsed the view that contempt of court requires only two elements: knowledge of the court's order coupled with a deliberate violation. *Id.* at 714–16, 113 S.Ct. at 2866, 125 L.Ed.2d at 580 (Rehnquist, C.J., concurring in part and dissenting in part). Under this analysis, a plea of former jeopardy could rarely be sustained because the elements needed for the criminal conviction would ordinarily bear no similarity to the elements necessary to establish contempt. *See Commonwealth v. Yerby*, 544 Pa. 578, 679 A.2d 217, 220 (1996) (Rehnquist opinion "renders double jeopardy protections illusory at best").

■ We need not reconcile the splintered views expressed in *Dixon*, however, to reject Kraklio's double jeopardy claim here. In *Dixon*, the orders that the defendants contemptuously violated were written broadly enough to incorporate the same crimes later prosecuted. Here, Kraklio concedes that the only specific conduct restrained by the Wayne County injunction was the collecting of fees under false pretenses. Thus proof of his contempt rested on his acceptance of $600 from undercover agents for filing claims in the nonexistent lawsuit.

By contrast, to sustain a conviction for securities fraud under section 502.401, the State was required to prove that Kraklio engaged in a transaction involving a security and, while so engaged, (1) employed a scheme to defraud, (2) made untrue statements of material fact (or omitted material facts necessary to make a statement *not* misleading), or (3) acted in such a way as to defraud or deceive. Iowa Code § 502.401. No proof that fees were actually collected was required. As the district court correctly observed, this comparison of elements yields differences that overcome a claim of double jeopardy under *Blockburger*. Accordingly

we find no error in the district court's denial of Kraklio's motion to dismiss on double jeopardy grounds.

**AFFIRMED.**

All justices concur except CARTER, J., who dissents.

CARTER, Justice (concurring in part and dissenting in part).

I concur on the contempt issue but dissent from the affirmance of the criminal conviction.

For reasons similar to those expressed in my dissent in *State v. Tyler*, 512 N.W.2d 552, 557–58 (Iowa 1994), I am convinced that the profit expectations, if any, of the alleged victims in this case were not tied to entrepreneurial or managerial efforts of Kraklio or anyone else. The scheme was being promoted on the basis that participants would automatically share in an existing res simply by filling out the necessary forms. Assistance in filling out forms is not an entrepreneurial or managerial endeavor.