STATE of Iowa, Appellee,

v.

**Dennis SHARKEY, Sr., Appellant.**

No. 95–2078.

Supreme Court of Iowa.

Dec. 24, 1997.

Timothy McCarthy II of Cook, Gotsdiner, McEnroe & McCarthy, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary Tabor, Assistant Attorney General, and Fred H. McCaw, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and ANDREASEN, JJ.

LARSON, Justice.

Dennis J. Sharkey, Jr. was convicted of unlawful disposal of hazardous waste under Iowa Code section 716B.2 (1995) and unlawful storage of hazardous waste under Iowa Code section 716B.4. He appealed on the grounds of double jeopardy and collateral estoppel because earlier he had been found guilty of contempt and sentenced for violating injunctions relating to his storage activities. We affirm his convictions.

### I. *The Facts.*

Sharkey operated a salvage yard near Dubuque. Three parcels of land are involved, parcels "A," "B," and "D." In September 1980 a district court entered a permanent injunction restraining Sharkey, in part, from causing or allowing open burning on parcels A and B and from operating a junkyard without a special-use permit.

In September 1988 Sharkey was enjoined from filling or excavating without permits on parcel B, conducting salvage operations, and storing materials outside the fenced salvage yard. He was also enjoined from conducting or allowing landfilling on parcel D with solid waste and allowing open burning on any of the property. That decree also required that Sharkey take certain abatement actions, including the removal and disposal of illegal buildings on parcel A, erecting a suitable fence of at least eight feet in height around the salvage yard on parcel B, removing and disposing of junk and vehicles stored outside the salvage area on parcel B, and removing vehicles and junk on parcel D.

In October 1994 the Dubuque County Attorney filed contempt charges against Sharkey for violation of these injunctions. The court found Sharkey guilty of contempt for violating numerous provisions of the court orders. The court fined Sharkey $500 and imposed a jail sentence of six months.

Meanwhile, in October 1994 the State charged Sharkey with five criminal violations relating to his operation of the junkyard and filling activities, four counts of illegal storage and disposal of hazardous waste, and one count of receiving stolen property. Sharkey was found guilty of two counts (illegal storage and disposal of hazardous material), fined $5000, and sentenced to two years imprisonment on each conviction.

### II. *The Double Jeopardy Argument.*

Sharkey contends that his prosecution has subjected him to double jeopardy because of his earlier punishment for contempt. Contempt proceedings are "quasi-criminal," *Phillips v. Iowa Dist. Ct.*, 380 N.W.2d 706, 708–09 (Iowa 1986), and the State concedes that criminal contempt implicates double jeopardy protections. *See United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2856, 125 L.Ed.2d 556, 568 (1993); *State v. Kraklio*, 560 N.W.2d 16, 19 (Iowa 1997). The State contends, however, that Sharkey's convictions under chapter 716B and the contempt orders involved distinct offenses and double jeopardy is therefore not implicated.

Under the Fifth Amendment to the United States Constitution, "[n]o person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." *See also* Iowa Const. art. I, § 12. The Fifth Amendment guarantee against double jeopardy applies to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). The Unit-

ed States Supreme Court has described double jeopardy protections as follows:

> [The double jeopardy] guarantee has been said to consist of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

*North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656, 664–65 (1969) (footnotes omitted) (overruled in part on other grounds by *Alabama v. Smith,* 490 U.S. 794, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989)). The Court also noted that, "the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it." *Id.* at 718, 89 S.Ct. at 2077, 23 L.Ed.2d at 665 (quoting *Ex Parte Lange,* 85 U.S. 163, 173, 18 Wall. 163, 173, 21 L.Ed. 872, 878 (1873)).

The seminal case for double jeopardy analysis is *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). That case held:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Sharkey argues that he was convicted on the criminal charges with the same evidence and witnesses used in the contempt proceeding, and the convictions arose from the same events.

> In determining whether separate punishment might be imposed, Blockburger requires that courts examine the offenses to ascertain "whether each provision requires proof of a fact which the other does not." As Blockburger and other decisions applying its principle reveal, the Court's application of the test focuses on the statutory elements of the offense. If each requires proof of a fact that the other does not, the Blockburger test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.

*Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616, 627 n. 17 (1975) (citations omitted).

The Supreme Court case of *Dixon* provided additional analysis of the same-elements test and marked a return to the *Blockburger* test after the Court had used a same-conduct test in *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). A majority in *Dixon* overruled *Grady. Dixon,* 509 U.S. at 704, 113 S.Ct. at 2860, 125 L.Ed.2d at 573.

In our *Kraklio* case, the conduct restrained by an injunction was the collecting of fees under false pretenses. We noted that, to support a conviction for securities fraud, the State was required to prove that Kraklio engaged in a transaction involving a security and, while so engaged, employed a scheme to defraud, made false statements of material fact, or acted in such a way as to defraud or deceive. *Kraklio,* 560 N.W.2d at 20. No proof was required regarding the collection of fees. We held that "this comparison of elements yields differences that overcome a claim of double jeopardy under *Blockburger." Id.*

In the present case, the contempt order showed that Sharkey violated the injunctions in the following ways:

> (a) In conducting filling and excavation activities on parcel B without obtaining a permit required by the Dubuque County Flood Plain Management Ordinance.

> (b) Storing salvage materials outside of the fenced salvage yard near the entrance to that portion of parcel B, east of Highway 52.

> (c) Operating a "Junkyard" on parcel B without the required special use permit.

> (d) Filling with solid waste and other materials on parcel D.

> (e) Permitting open burning to occur on parcel B.

> (f) Failing to completely surround parcel B with a painted fence, masonry wall or suitable substitute not less than eight feet in height.

(g) Failing to remove all vehicles and junk and other material stored on parcel D.

(h) Storing materials within the salvage yard in the open at a height greater than the screening fence.

In the court's instruction to the jury for unlawful disposal of hazardous waste under Iowa Code section 716B.2, the court stated:

The State must prove all of the following elements of Unlawful Disposal of Hazardous Waste:

1. On or about September 28, 1994, defendant:

(a) Disposed of hazardous waste; or

(b) Arranged for the disposal of hazardous waste; or

(c) Allowed the disposal of hazardous waste.

2. Defendant knew or had reason to know that the material was hazardous waste.

3. The hazardous waste was disposed of on the following property:

[Description of Property]

4. The property described in paragraph 3 above was a location not authorized by the Iowa Department of Natural Resources or the United States Environmental Protection Agency for the disposal of hazardous waste.

Instruction number 25, for unlawful storage of hazardous waste under Iowa Code section 716B.4, read:

The State must prove all of the following elements of Unlawful Storage of Hazardous Waste:

1. On or about September 28, 1994, defendant stored hazardous waste.

2. Defendant knew or had reason to know the material was hazardous waste.

3. The hazardous waste was stored on the following property:

[Description of Property]

4. No permit [pursuant to 42 U.S.C. § 6925 or § 6926] for the storage of hazardous waste was issued for the property described in paragraph 3 above.

The gravamen of the criminal prosecutions was the hazardous nature of the material stored and disposed of by Sharkey. On the other hand, the court's injunctions, and the contempt action based on them, merely prohibited Sharkey from landfilling with solid material; the hazardous nature of the waste was not a part of the injunction or the contempt action that followed.

Therefore, the elements of the contempt and the criminal charges are so dissimilar that even the broadest application of the double jeopardy tests under *Blockburger* could not support Sharkey's argument. We therefore reject it.

### III. *The Collateral Estoppel Argument.*

Sharkey contends that his criminal sentences are invalid under principles of collateral estoppel. The Supreme Court outlined this concept in *Ashe v. Swenson.* It explained:

[Collateral estoppel] means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475 (1970).

We have outlined the requirements for collateral estoppel as follows:

Certain conditions must be present for collateral estoppel to exist: (1) the issue decided in the prior trial must be precisely the same issue presented in the pending action; (2) a decision on that issue must have been necessary for the judgment in the prior trial; and (3) the party to be estopped from relitigating the issue must have been a party in the prior trial (or the party's interests must have been adequately represented by a party to the prior proceeding). Furthermore, collateral estoppel applies only to ultimate facts, not to evidentiary facts.

*State v. Sunclades,* 305 N.W.2d 491, 495–96 (Iowa 1981) (citation omitted). While we held in *State v. Stergion,* 248 N.W.2d 911, 913 (Iowa 1976), that the doctrine was appli-

cable in criminal cases, it could not help Sharkey here. We have said that

> [i]n the field of criminal law collateral estoppel is ordinarily urged by an accused who relies upon a prior acquittal. It may also be employed, however, where a former conviction was based upon a fact which necessarily precludes a finding of guilt as to the charge for which defendant was later prosecuted.

*State v. Pospishel,* 218 N.W.2d 602, 604 (Iowa 1974) (citation omitted).

Applying this test, no elements of the criminal charges had been resolved favorably to Sharkey in the contempt case, and he therefore cannot claim collateral estoppel. We affirm the convictions.

**AFFIRMED.**