STATE OF NORTH CAROLINA v. PATRICIA G. BROWN

No. 188A96

(Filed 9 April 1999)

## 1. Constitutional Law— double jeopardy—solicitation to commit murder—first-degree murder as accessory

Defendant's right to be free from double jeopardy was violated when she was convicted and punished for both solicitation to commit murder and first-degree murder under an accessory before the fact theory since solicitation to commit murder is a lesser-included offense of murder as an accessory before the fact. Accordingly, defendant's solicitation conviction must be vacated.

## 2. Evidence— hearsay—state of mind exception—victim's statements—marital problems—relevancy

In a prosecution of defendant for the first-degree murder of her husband, statements made by the husband to five colleagues about his financial problems within the marriage, the couple's disagreements, deterioration and incompatibility within the marriage, and the husband's concern for his safety due to the ill will within the marriage were admissible under the existing state of mind exception to the hearsay rule and were relevant to contradict defendant's contention that she and her husband had a loving and compassionate relationship.

## 3. Evidence— statements to murder victim—consideration of divorce—relevancy to show motive

In a prosecution of defendant for the first-degree murder of her husband, testimony by three witnesses that defendant and the victim were having marital problems and that they had suggested that the victim might consider divorce was relevant to establish a motive for the murder. Evidence of motive is always relevant and admissible where it tends to show that defendant committed the alleged act.

## 4. Evidence— hearsay—statements to murder victim—not proof of matter asserted

In a prosecution of defendant for the first-degree murder of her husband, testimony by a witness that she told the victim that "you can always get a divorce" and by a second witness that he told the victim that "he might consider divorce" did not constitute

inadmissible hearsay since the statements were made by the persons testifying and were not offered to prove whether the victim could get or consider a divorce.

**5. Evidence— opinion testimony by lay persons—personal observations—shorthand statements of facts**

In a prosecution of defendant for the first-degree murder of her husband, testimony by a colleague of the victim that he sensed that the victim was unhappy in his marriage relationship, testimony by a witness that she "had suspected [defendant] all the time," testimony by an officer that defendant "appeared to be trying to be emotional" during an interview, and testimony by another witness that there "seemed to be tension" between the victim and defendant were based on the personal observations of the witnesses and were admissible under N.C.G.S. § 8C-1, Rule 701 as shorthand statements of facts.

**6. Evidence— corroboration—conversations with other witnesses—testimony not identical**

Testimony by witnesses about their prior conversations with other witnesses, although not precisely identical to the original testimony, was properly admitted for corroborative purposes since it tended to strengthen, supplement and confirm the testimony of the other witnesses, and the trial court gave the jury proper limiting instructions.

**7. Evidence— victim character evidence—defendant's tactical decision to allow—waiver of issue on appeal**

In a prosecution of defendant for the murder of her husband, defendant may not complain on appeal that the trial court erred in admitting victim character evidence when she made a tactical decision to allow and support the introduction of the victim's character to bolster her defense that she had no reason to murder such a loving and caring husband.

**8. Evidence— accomplice testimony—plea arrangements—parole eligibility**

The trial court properly allowed two accomplices to testify in this murder trial that they were witnesses for the State because of their plea arrangements and correctly precluded them from testifying with regard to their understanding of when they might be eligible for parole.

**9. Evidence— impeachment of coconspirator—statements and letters to wife-coconspirator**

The trial court did not improperly prohibit a defendant on trial for the murder of her husband from impeaching a coconspirator with statements contained in letters he wrote to his wife, also a coconspirator, while both coconspirators were incarcerated. Rather, the record shows that the trial court did allow defendant to cross-examine the coconspirator about these statements for impeachment purposes.

**10. Evidence— murder trial—condom in victim's dresser— irrelevancy**

Evidence that defendant's mother found a condom in the victim's dresser drawer after his murder was irrelevant and properly excluded in this prosecution of defendant for the first-degree murder of her husband.

**11. Evidence— refreshing recollection—use of letter—knowledge of roles in murder—relevancy**

The trial court did not err by allowing the prosecutor to use during cross-examination a letter a witness wrote to her daughter, a coconspirator in the murder of defendant's husband, to refresh the recollection of the witness about a statement in the letter that she understood her daughter's part in the murder and "everyone else that had a part in it." Further, this statement was relevant as it went directly to the issue of the witness's knowledge that roles or parts were in fact played by the coconspirators in the murder.

**12. Evidence— redirect examination—affidavits not fraudulent—evidence not improperly excluded**

The trial court did not err by excluding evidence on redirect examination that defendant did not fraudulently complete sworn affidavits disclosing her financial resources and assets after the prosecutor used the affidavits to impeach defendant on cross-examination by eliciting from her that she had significantly undervalued and omitted much of her property on both affidavits where the trial court allowed defendant to explain on redirect examination that she was not trying to mislead anyone but had attempted to be honest and did the best she could in completing these documents.

STATE v. BROWN

[350 N.C. 193 (1999)]

**13. Criminal Law— prosecutor's closing arguments—inferences from the evidence**

In a prosecution of defendant for the first-degree murder of her husband as an accessory before the fact, the prosecutor's closing argument that defendant called the victim to inform him that a coconspirator, the actual gunman, was coming to visit was based on a reasonable inference supported by the evidence when viewed in the context in which the argument was made and the overall factual circumstances to which it referred. Also, the prosecutor's statements about defendant's financial motivations for the murder were supported by testimony at trial concerning what defendant was expected to receive upon her husband's death.

**14. Sentencing— conspiracy to murder—aggravating factor—position of leadership or dominance—not element of joined accessory murder conviction**

The trial court did not erroneously use the acts that formed the gravamen of a joined accessory murder conviction when it found as an aggravating factor for conspiracy to commit murder that "defendant occupied a position of leadership or dominance of other participants in the commission of the offense." With the possible exception of the included required action that defendant "commanded" the principal to murder the victim, accessory before the fact to murder does not in any way require that the defendant occupy a position of leadership or dominance in the commission of the crime, and there was no evidence in this case that defendant "commanded" the principal.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.

Appeal as of right by defendant pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of life imprisonment entered by Ross, J., at the 29 May 1995 Criminal Session of Superior Court, Guilford County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant also appeals from an order denying her motion for appropriate relief entered by Ross, J., on 21 May 1997 in Superior Court, Guilford County. Defendant's motion to bypass the Court of Appeals as to an additional judgment was allowed by this Court 16 February 1998. Heard in the Supreme Court 29 September 1998.

**STATE v. BROWN**

[350 N.C. 193 (1999)]

*Michael F. Easley, Attorney General, by David F. Hoke, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Daniel R. Pollitt, Assistant Appellate Defender, for defendant-appellant.*

LAKE, Justice.

The defendant was indicted on 1 August 1994 for first-degree murder; on 12 December 1994, she was indicted for the additional counts of solicitation to commit murder and conspiracy to commit murder. Defendant was tried capitally to a jury at the 29 May 1995 Criminal Session of Superior Court, Guilford County, Judge Thomas W. Ross presiding. The jury found defendant guilty of all charges. Following a capital sentencing proceeding, the jury recommended a sentence of life imprisonment as to the first-degree murder conviction. On 31 July 1995, the trial court sentenced defendant to life imprisonment for first-degree murder and to a single concurrent term of thirty years' imprisonment for the convictions for solicitation to commit murder and conspiracy to commit murder.

At trial, the evidence tended to show that in March or April of 1990, defendant contacted her sister and brother-in-law, Sheila and Leroy Wentzel, in New Hope, Alabama, and asked if they knew anyone who would shoot and kill her husband, Fred Brown, in High Point, North Carolina. Leroy Wentzel volunteered. Defendant met with the Wentzels in Alabama to discuss how her High Point house was arranged and to plan the murder. Defendant paid the Wentzels $1,000 up front to kill her husband and offered to pay them an additional $30,000 upon completion of the killing. After this initial meeting, Leroy Wentzel started driving to North Carolina. On his way, Wentzel decided that he could not continue with the murder plans, and he called defendant and told her that he "couldn't do it at that time."

Several months later, Leroy and Sheila Wentzel visited defendant in her High Point home and met defendant's husband, Fred Brown. After this visit, on 23 April 1991, Leroy Wentzel again spoke with defendant, and they made arrangements for the murder of defendant's husband. Wentzel testified that they planned that he would call Fred Brown at his house on 24 April 1991, under the pretext that Wentzel's car had broken down. Defendant made arrangements to be at a real-estate meeting and to have her daughter out of the house so that her husband would be the only one home to receive Wentzel's

phone call. At approximately noon on 24 April 1991, Wentzel called defendant and told her that he was on his way.

Wentzel drove to High Point. He took a .22-caliber revolver and wore a yellow and black sweatshirt. At approximately 9:30 p.m., Wentzel arrived in High Point and, from a dark area along Highway 68, called defendant's home and told defendant's husband that his car had broken down. After learning Wentzel's location, the victim said he would be out in a few minutes to assist him. Wentzel opened the hood of his car and pulled the coil wire off so the vehicle would not start. When the victim arrived, he turned the hazard lights of his vehicle on, and he and Wentzel looked under the hood of Wentzel's vehicle and discussed what to do next. Wentzel then suggested that they walk away from the car a distance. While doing so, he told the victim that the victim's wife wanted him dead and showed him the gun from under the sweatshirt.

The victim begged Wentzel not to kill him and started to run. Nonetheless, Wentzel shot the victim once in the back, and he fell to the ground; Wentzel then shot the victim twice more in the head from close range to make certain he was dead. Wentzel returned to his car and proceeded to drive down the road. However, upon remembering that defendant had told him to make the murder look like a robbery, Wentzel returned to the crime scene, removed the victim's wallet from his back pocket, turned the hazard lights of the victim's vehicle off and then started home to Alabama. As he drove home, Wentzel threw the victim's wallet away. Several months later, he threw the gun into the Coosa River. A passerby discovered the victim's body lying facedown in a ditch beside Highway 68, with a sweatshirt wrapped around his right arm. A pool of blood surrounded the victim's head. An autopsy indicated that the victim had sustained three gunshot wounds, one to the back and two to the left side of the head. Over the course of the next few months, defendant paid Wentzel approximately $3,500.

Thereafter, in June 1994, when Leroy Wentzel was on the verge of suicide, he wrote two letters which he gave to his daughter, Janelle, with instructions to open only after his death. In these letters, Wentzel stated that he "shot Fred Brown by his wife, Pat," and that he was to be paid $30,000. On 13 July 1994, Wentzel was arrested and jailed in Pennsylvania for failure to pay child support. Also, on 13 July 1994, Janelle Wentzel gave her father's letters to the police in Reading, Pennsylvania, and she confirmed that her father also had

told her about the murder of Fred Brown and that he did it for his wife's sister, the defendant. The Reading Police Department contacted the Guilford County Sheriff's Department with regard to the alleged homicide. In November 1994, detectives from the Guilford County Sheriff's Department talked with Wentzel regarding the killing of Fred Brown. Wentzel gave statements to the detectives about the murder and his involvement. Both of Wentzel's sons confirmed that their father also had told them about the murder and that it was done for defendant, who was to receive insurance money as a result of her husband's death.

The evidence further tended to show, from defendant and victim's tax returns for the years 1984 through 1990, that they were having financial problems. After the murder, on 30 April 1991, a representative from the victim's employer went to defendant's residence, upon her request, to discuss death benefits. Upon learning of the amount of death benefits and retirement contributions to which defendant was entitled, defendant stated that she could not believe that her husband died and did not leave her at least $250,000 in life insurance. On 4 June 1991, two death-benefit checks were issued to defendant totaling $143,307.25. Defendant portrayed her marital relationship with her husband to be loving, caring and compassionate. However, colleagues of the victim and a housekeeper all testified that defendant and the victim had marital problems and strife within their marriage.

[1] In her first assignment of error, defendant contends that her conviction of solicitation to commit murder must be vacated because her conviction of both solicitation to commit murder and first-degree murder under an accessory before the fact theory constitute unconstitutional multiple punishment for the same offense. Defendant further contends that she is entitled to a new sentencing proceeding in the conspiracy case because her solicitation to commit murder conviction must be vacated. Defendant asserts that her constitutional right to be free from double jeopardy was violated because she was punished for both a lesser-included offense (solicitation) as well as the greater offense (murder). This Court has previously addressed this issue under similar facts and held that "solicitation to commit murder is a lesser included offense of murder as an accessory before the fact" and that "solicitation to commit murder merges into the offense of being an accessory before the fact to the same murder." *State v. Westbrooks*, 345 N.C. 43, 55-57, 478 S.E.2d 483, 490-91 (1996). Accordingly, we hold that, in this case, defendant's solicitation conviction must be vacated.

Defendant, in her second assignment of error, seeks this Court's reconsideration of its prior holding that conspiracy to commit murder is not a lesser-included offense of first-degree murder as an accessory before the fact. This Court has stated:

> [T]he offense of conspiracy and the offense of being an accessory before the fact are separate, distinct crimes, which do not merge into each other and neither of which is a lesser included offense of the other. A person may, therefore, be lawfully convicted of and punished for both a conspiracy to commit a murder and being an accessory before the fact to the same murder.

*State v. Looney,* 294 N.C. 1, 11, 240 S.E.2d 612, 618 (1978). Consistent with this and as we held in *Westbrooks,* 345 N.C. at 57, 478 S.E.2d at 491, we find no compelling reason for this Court to overrule our previous holding on this issue. This assignment of error is overruled.

[2] In defendant's third assignment of error, defendant contends that the trial court erroneously admitted into evidence at trial hearsay statements attributed to the victim. We find no error in this regard. At trial, five colleagues of the victim's testified that they talked with the victim about his financial problems within his marriage; the couple's disagreements, deterioration and incompatibility within the marriage; and the victim's concern for his safety due to the ill will within the marriage. The trial court admitted the following testimony: (1) Kenneth Vaughn's testimony that Fred Brown told him, "I would not be surprised if [Pat and her mother] didn't put a contract out on me"; and "I would be better off to them, dead"; (2) Lynwood English's testimony that Fred "expressed concern from time to time [about] financial difficulties [and] . . . over the financial burden of paying for the home"; (3) Mildred Mallard's testimony that Fred said his marriage was not going well; (4) Colan Long's testimony that Fred said his marriage relationship was "kind of stormy"; and (5) Edith King's testimony that Fred said "[Sabre, their daughter,] kept stuff going and that she was a manipulator."

The trial court admitted these statements under N.C.G.S. § 8C-1, Rule 803(3), "statement[s] of the declarant's then existing state of mind" exception to the hearsay rule. Furthermore, the trial court determined that the probative value of admitting these statements outweighed any prejudicial value. Defendant argues that these statements were statements of fact rather than of state of mind, and thus should have been excluded. We disagree.

**STATE v. BROWN**

[350 N.C. 193 (1999)]

This Court has previously addressed this issue in *State v. Westbrooks*, 345 N.C. 43, 478 S.E.2d 483, when presented with almost identical facts. In *Westbrooks*, relatives of the victim-husband testified with regard to statements the victim had made about his financial and marital problems. *Id.* at 58, 478 S.E.2d at 492. We held that the trial court properly admitted these statements, as they indicated the victim's "mental condition at the time they were made and were not merely a recitation of facts." *Id.* at 59, 478 S.E.2d at 492. The Court there stated:

> "Evidence tending to show the victim's state of mind is admissible so long as the victim's state of mind is relevant to the case at hand." *State v. Stager*, 329 N.C. 278, 314, 406 S.E.2d 876, 897 (1991). In the instant case evidence of the victim's state of mind is relevant in that it bears directly on the victim's relationship with the defendant at the time he was killed. . . . These statements [by the victim] also corroborate a motive for the murder—that defendant was in debt and could not repay her obligations. *See Stager*, 329 N.C. at 315, 406 S.E.2d at 897. Thus, these statements are admissible as statements of the declarant's then-existing state of mind.

*Westbrooks*, 345 N.C. at 59, 478 S.E.2d at 492. Similarly, in the case *sub judice*, the statements attributed to the victim were admissible, as they indicated his then-existing state of mind and were not merely a recitation of facts. In addition, the victim's statements concerning the status of his marriage were admissible to contradict defendant's contention at trial that she and the victim had a loving and compassionate relationship. Defendant's testimony about the positive state of her marriage opened the door to rebuttal evidence that the couple's relationship was not as defendant portrayed. This Court has previously stated:

> "Discrediting a witness by proving, through other evidence, that the facts were otherwise than [s]he testified, is an obvious and customary process that needs little comment. If the challenged fact is material, the contradicting evidence is just as much substantive evidence as the testimony under attack, and no special rules are required."

*State v. Lambert*, 341 N.C. 36, 49, 460 S.E.2d 123, 131 (1995) (quoting 1 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 160 (4th ed. 1993)). Thus, we conclude that the statements complained of were properly admitted as expressions of the

victim's then-existing state of mind, and this assignment of error is overruled.

In her fourth assignment of error, defendant argues that the trial court erred by admitting, through three State's witnesses, hearsay evidence about what they said to the victim before the murder. Defendant further contends that the testimony from these three witnesses should not have been admitted because it is irrelevant. We disagree as to both of these contentions.

[3] Turning first to the question of relevancy, we conclude that the trial court did not err in failing to exclude the contested testimony on relevancy grounds. The witnesses' testimony that defendant and the victim were having marital problems and strain within their marriage tends to establish a motive for the murder of defendant's husband. It is well established that

> "in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible. It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact."

*State v. Jones*, 336 N.C. 229, 243, 443 S.E.2d 48, 54 (quoting *State v. Arnold*, 284 N.C. 41, 47-48, 199 S.E.2d 423, 427 (1973)) (citations omitted in original), *cert. denied*, 513 U.S. 1003, 130 L. Ed. 2d 423 (1994). Statements made by the declarant to the victim which tend to corroborate a motive for murder and establish the victim's then-existing state of mind are admissible. *Westbrooks*, 345 N.C. at 59, 478 S.E.2d at 493. Thus, we hold that evidence of motive is always relevant and admissible where it tends to show that the defendant committed the alleged act.

[4] Second, with regard to the hearsay contention, we conclude the trial court did not err in admitting this testimony because it does not constitute hearsay. At trial, during the guilt-innocence phase, the trial court overruled defendant's objection and admitted the following testimony from three State's witnesses: (1) Mildred Mallard testified that she told the victim, "you can always get a divorce"; (2) Colan Long testified that he told the victim, "he might consider divorce"; and (3) Kenneth Vaughn testified that he told officers that defendant's desire for their daughter to get a job and start supporting herself had

"caused a lot of strain on their part." N.C.G.S. § 8C-1, Rule 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C.G.S. § 8C-1, Rule 801(c) (1992). Since the testimony in question was actually made by the person testifying and was not offered to prove whether the victim could get or consider a divorce, or otherwise as stated, it does not constitute hearsay. Accordingly, this assignment of error is overruled.

**[5]** In her fifth assignment of error, defendant asserts that the trial court erred in allowing irrelevant testimony of witnesses as to their own perceptions and observations of the defendant and the victim. We disagree. Defendant contends the following witnesses' testimony should have been excluded as irrelevant: (1) Colan Long, one of the victim's colleagues, testified that he "sensed at times that, you know, [Fred] was somewhat unhappy in his [marriage] relationship"; (2) Edith King testified that she "had suspected Pat all the time"; (3) law enforcement officer Ronald Washburn testified during an interview that, in his opinion, "[Pat] appeared to be trying to be emotional"; and (4) Mildred Mallard testified that there "seemed to be tension between [Fred and Pat]."

N.C.G.S. § 8C-1, Rule 701 allows a witness to testify as to his opinions or inferences which are "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." N.C.G.S. § 8C-1, Rule 701 (1992).

> "This Court has long held that a witness may state the 'instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time.' [*State v. Skeen*, 182 N.C. 844, 845, 109 S.E. 71, 72 (1921).] Such statements are usually referred to as shorthand statements of facts."

*State v. Williams*, 319 N.C. 73, 78, 352 S.E.2d 428, 432 (1987) (quoting *State v. Spaulding*, 288 N.C. 397, 411, 219 S.E.2d 178, 187 (1975), *death sentence vacated*, 428 U.S. 904, 49 L. Ed. 2d 1210 (1976)). In the case *sub judice*, the witnesses' testimony of their impressions of the victim, the defendant, and their marital relationship were all based on their own personal observations and were as such shorthand statements of fact. Therefore, the contested testimony was properly

admitted, as it clearly falls within Rule 701. Accordingly, this assignment of error is overruled.

[6] In her sixth' and seventh assignments of error, defendant contends that the trial court erred in admitting into evidence at trial noncorroborative hearsay testimony of witnesses. We disagree, as we find that this testimony clearly met the test for admissibility for corroborative purposes. Defendant contests the admissibility of the following witnesses' testimony: (1) Frank Wilkins' testimony with regard to Dorothy Whittington's prior out-of-court statements to him about the number of people she saw standing off the shoulder of Highway 68 at approximately 11:00 p.m. on 24 April 1991; (2) law enforcement officer Robert Padgett's testimony with regard to what Colan Long, Kenneth Vaughn, Lynwood English and Elizabeth Bittner, the victim's colleagues, had told him about conversations they had had with the victim about incompatibility within the marriage; (3) law enforcement officer Robert Dietzen's testimony about what the housekeeper, Addie Collins, had told him about her observations of the victim's troubled marriage and the profane language she heard defendant direct towards the victim; (4) law enforcement officer Phillip Byrd's testimony with regard to what Edith King had told him about the victim's poor relationship with his family; and (5) private investigator Richard Jackson's testimony about what Sheila Wentzel had told him about the plan, conspiracy and motive for defendant killing her husband.

This Court has long held that "corroborative" means "[t]o strengthen; to add weight or credibility to a thing by additional and confirming facts or evidence." Black's Law Dictionary 344 (6th ed. 1990); see State v. Higginbottom, 312 N.C. 760, 769, 324 S.E.2d 834, 840 (1985). "It is not necessary that evidence prove the precise facts brought out in a witness's testimony before that evidence may be deemed corroborative of such testimony and properly admissible." Id. at 768, 324 S.E.2d at 840. The contested witnesses' testimony about their prior conversations with other witnesses, although not precisely identical to the original testimony, tended to strengthen and confirm the testimony of the first witnesses. As such, the secondary witnesses' statements constituted corroborating evidence supplementing and confirming the first witnesses' testimony.

Furthermore, when objections were made or bench conferences held regarding the testimony, the trial court consistently and properly instructed the jury that the contested testimony was at least corrob-

orative in part and admitted the statements with a limiting instruction that the evidence was to be used only for corroborative purposes. Additionally, the trial court, in its final instructions to the jury, specifically instructed:

> Now, ladies and gentlemen, when evidence has been received tending to show that at an earlier time a witness made a statement which may be consistent with or may conflict with the witness' testimony at this trial, then you must not consider such earlier statement as evidence of the truth of what was said at that earlier time because it was not made under oath at this trial. If you believe that such earlier statement was made and that it is consistent with or does conflict with the testimony of the witness at this trial, then you may consider this, together with all other facts and circumstances bearing upon the witness' truthfulness, in deciding whether you will believe or disbelieve the witness' testimony at this trial.

We therefore conclude that the trial court in each instance properly admitted the corroborative evidence and clearly and effectively instructed the jury with regard to the purpose for which it was offered. These assignments of error are overruled.

[7] In defendant's eighth assignment of error, she contends that the trial court erred in admitting inadmissible and irrelevant evidence about the victim's good character. Defendant argues that although she failed to object at trial, the trial court erred in admitting: (1) John Barrow's testimony that the victim was "very well behaved," "very well mannered," "a role model," and that he received several decorations in the military; (2) Mildred Mallard's testimony that the victim was "a caring, helpful, kind individual. He'd do anything for anyone willingly"; (3) Colan Long's testimony that the victim "did his [work] duties dutifully, [and was] very conscientious"; (4) Edith King's testimony that the victim was "a nice Christian man," "a good man. He never bothered anybody. . . . He was just a friendly man"; (5) Addie Collins' testimony that the victim was "kindhearted, very gentle. He was a believer, believed in prayer, and had a good attitude"; and (6) Kenneth's Vaughn's testimony that the victim was "a very easy going, outgoing person. He loved people [and] children. He was a Christian. He never met a stranger. Everybody liked him that came into contact with him." When evidence is admitted over objection and the same evidence has been previously admitted or is later admitted without objection, the benefit of the objection is lost. *See id.*

**STATE v. BROWN**

[350 N.C. 193 (1999)]

In the following instances, defendant did object to the introduction of evidence relating to the victim's character: (1) the trial court, over objection, allowed the introduction of a photograph of the victim as a captain in the Army; (2) objections to newspaper clippings about the family, Exhibits 2, 3 and 4, were sustained; (3) the trial court admitted Lynwood English's testimony, over objection, that the victim was "a very dedicated, diligent, extremely conscientious faculty member," "a very friendly person, quite gregarious, and very easy to get a long with"; and (4) the trial court allowed Colan Long's testimony, over objection, that the victim was "a very personable person, made friends easily, was very likeable, a very giving person." In each of these limited instances, when defendant did object to the introduction of evidence of the victim's character, it was where "virtually the same evidence was admitted without objection at other times during the trial, either before or after defendant's objections were made. Therefore, defendant waived his right to raise these objections on appeal." *Id.*

The record reflects that on cross-examination defendant elicited additional victim character evidence from the State's witnesses indicating that she made a tactical decision to allow and further the introduction of the victim's character to bolster her defense that she had no reason to murder such a loving and caring husband. For instance, defendant elicited on cross-examination that her husband had a distinguished military background; was a "congenial and nice man that people got along with"; had a good disposition; was a "man who loved his wife"; was well liked, competent and a good father; and was "behind his wife one hundred percent."

This Court has previously held:

[I]t is imperative that defendant decide at trial whether he wants the statement[s] admitted or not. It is a tactical decision that can only be made by defendant, not the court. A defendant may not, for tactical reasons, fail to object at trial to evidence he hopes will help him and later on appeal assign admission of that evidence as error when in light of the jury's verdict the evidence was not helpful, or was even hurtful, to defendant. The waiver rule was designed precisely to prevent this kind of second-guessing of the probable impact of evidence on the jury by parties who lose at the trial level. Defendant made his tactical decision to let the evidence come in at trial without objection. He may not now be heard to complain.

*State v. Stokes,* 319 N.C. 1, 15, 352 S.E.2d 653, 661 (1987). Accordingly, in the case *sub judice,* defendant may not now complain that the trial court erred in admitting victim character evidence when she made a tactical decision to allow and support the introduction of the victim's character. This assignment of error is without merit.

[8] Defendant, in her ninth assignment of error, argues that the trial court erred in limiting her right to confront, cross-examine and impeach accomplices Leroy and Sheila Wentzel by precluding defendant from inquiring about their parole-eligibility understanding in connection with their guilty pleas. We disagree and conclude that the trial court ruled in exact accordance with the law on this issue. The trial court properly allowed Leroy and Sheila Wentzel to state that they were testifying for the State because of their plea arrangements and correctly precluded their testifying with regard to their understanding of when they might be eligible for parole. This Court has previously addressed this identical issue in *State v. Westbrooks,* where defense counsel attempted to elicit parole-eligibility understanding from two accomplices hired by defendant-wife to kill her husband. We held that the trial court properly allowed both witnesses to testify that they were motivated to testify for the State by their plea arrangement because this type of testimony is " 'more probative of bias.' " *Westbrooks,* 345 N.C. at 68, 478 S.E.2d at 498 (quoting *State v. Wilson,* 322 N.C. 117, 136, 367 S.E.2d 589, 600 (1988)). However, we also held that a witness must not testify "about his understanding of the laws concerning sentencing and parole eligibility." *Id.* Accordingly, in the case *sub judice,* we find that the trial court did not err in prohibiting the two accomplice witnesses from testifying about their understanding of parole eligibility, and this assignment of error is overruled.

[9] In her tenth assignment of error, defendant asserts that the trial court erred in prohibiting her from impeaching coconspirator Leroy Wentzel with statements contained in letters he wrote to his wife, Sheila Wentzel, while the Wentzels were both incarcerated. We disagree. Our thorough review of the record indicates that the trial court allowed defendant to cross-examine Leroy Wentzel for impeachment purposes about these statements. These letters contained statements pertinent to their pending cases. Defendant attempted to use statements contained in these letters to impeach Leroy Wentzel. The State objected, having filed a pretrial motion *in limine* to limit use of these letters pursuant to the common law spousal privilege and N.C.G.S. § 8-57(c). N.C.G.S. § 8-57(c) provides that "[n]o husband or

STATE v. BROWN

[350 N.C. 193 (1999)]

wife shall be compellable in any event to disclose any confidential communication made by one to the other during their marriage." N.C.G.S. § 8-57(c) (1986).

After a *voir dire* regarding the admissibility of the statements contained in the letters, the trial court stated:

If the defendant [Leroy Wentzel] claims [the statements] are privileged at the time that he is asked these questions, he will not be compelled to respond, the court finding that, under G.S. 8-57, that each of these statements are confidential communications made in writing by one spouse to another during the marriage, and, further, the court would find that the statements were induced by the marital relationship and were prompted by confidence and loyalty engendered by that relationship. . . . If the defendant [Leroy Wentzel] waives his privilege, the court will find that any statements relating to [the letters] would be the proper subject of impeachment.

The trial court then raised the additional issue that if the letters are statements of coconspirators, then defendant may have a right to use the statements that rise above any privilege. After further consideration of the issue, the trial court stated "the court is going to allow inquiry into the [letters] . . . ruling that the defendant's confrontation right, particularly in circumstances of a husband and wife being involved in a conspiracy, would outweigh the privilege that exists in our State, and would authorize cross-examination on that issue." Defendant then cross-examined Leroy Wentzel about the statements contained in the letters. Thus, the Court specifically allowed cross-examination of the witness about the statements contained in the letters. Accordingly, we find no merit in this assignment of error.

[10] In her eleventh assignment of error, defendant contends that the trial court erred in sustaining an objection to defendant's attempt to introduce evidence of the defendant's mother having found a condom in the victim's dresser drawer after his murder. We disagree and find that the trial court properly sustained the State's objection on relevancy grounds. Evidence is inadmissible if it fails to have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). We hold that the trial court properly sustained the State's objection to the introduction of this bit of contested evidence, as such evidence was plainly irrelevant to any fact of consequence to this action.

Furthermore, regardless of whether the trial court properly excluded this evidence, the trial court's decision is a matter within its discretion, and "[a] trial court may be reversed for abuse of discretion only upon a showing that its ruling was manifestly unsupported by reason and could not have been the result of a reasoned decision." *State v. Riddick*, 315 N.C. 749, 756, 340 S.E.2d 55, 59 (1986). We find no abuse of discretion by the trial court in excluding this contested evidence and accordingly overrule this assignment of error.

**[11]** In her twelfth assignment of error, defendant contends that the trial court erred in allowing cross-examination of defense witness Edna Madison about a letter she wrote to her daughter, Sheila Wentzel. We find that the trial court properly allowed the prosecutor on cross-examination to use the letter to refresh the witness's recollection about what she wrote.

Edna Madison stated on cross-examination that she had discussed the murder of the victim with both of her daughters, defendant and Sheila Wentzel. When the prosecutor asked the witness if she remembered telling Sheila Wentzel that she understood her part in the murder and "everyone else that had a part in it," the witness responded that she did not know. On *voir dire* out of the jury's presence, the prosecutor showed the witness a letter which she had written to her daughter, Sheila Wentzel, which contained the statement: "I understand your part and everyone else that had a part in it." The witness then stated that her recollection had been refreshed, and she remembered making the statement. Accordingly, the trial court then properly allowed the prosecutor to use the letter before the jury for purposes of showing the refreshing of the witness's recollection of that statement. This Court has consistently held that a party may use any material to refresh the memory of a witness, including statements made by persons other than the witness. *State v. Daniels*, 337 N.C. 243, 446 S.E.2d 298 (1994), *cert. denied*, 513 U.S. 1135, 130 L. Ed. 2d 895 (1995). We hold in the case *sub judice* that the prosecutor properly used the letter to refresh the witness's recollection.

Additionally, defendant contends that evidence elicited from witness Edna Madison was irrelevant and thus inadmissible. We disagree. We note that "[a] witness may be cross-examined on any matter relevant to any issue in the case, including credibility." N.C.G.S. § 8C-1, Rule 611(b) (1992). The contested statement was indeed highly relevant, as it went directly to the issue of the witness's understanding or knowledge that roles or parts were in fact played by the coconspirators in the murder. The trial court did not abuse its dis-

cretion in allowing cross-examination of the witness with regard to the letter. Accordingly, this assignment of error is overruled.

[12] In her thirteenth assignment of error, defendant argues that the trial court erred in excluding evidence on redirect examination that she did not fraudulently complete sworn documents disclosing her financial resources and assets of the victim. Again, we disagree. A review of the record reveals that the trial court did not err in restricting defendant's redirect examination.

During cross-examination of defendant, the prosecutor attempted to use for impeachment purposes sworn documents which the defendant had completed indicating her financial resources and properties (Exhibits 127, 128 and 79A) to show she had omitted a substantial amount of property and business assets. Upon defense counsel's objection to the use of these documents, the trial court conducted a *voir dire* outside the jury's presence. During *voir dire*, the prosecutor established that defendant had failed to fully and accurately disclose her real estate, personal property and other resources. The trial court allowed the use of Exhibits 127 and 79A but disallowed the use of Exhibit 128. On cross-examination, the prosecutor elicited from the defendant that she had significantly undervalued and omitted much of her property on both of these affidavits. On Exhibit 127, defendant failed to list her property in Florida and a note she was entitled to collect, and she listed property she sold for $34,000 as having sold for $17,000. On Exhibit 79A, defendant failed to list savings bonds, a note, Florida property, Twentieth Century funds, Fort Sill checking and saving accounts, a Pentagon savings account, a Greenwood Trust account, a Fidelity Destiney account and a Magellan account.

On redirect examination, the trial court allowed defendant to explain that she was not trying to mislead anyone, that she had attempted to be honest and that she did the best she could in completing these documents. We find that the record clearly demonstrates that defendant was permitted to explain the inaccuracies and omissions in the affidavits on redirect examination. Accordingly, we conclude that the trial court did not erroneously exclude defendant's evidence that she did not fraudulently complete the documents. This assignment of error is overruled.

[13] In her fourteenth assignment of error, defendant contends the trial court erred in overruling her objections to portions of the prosecutor's closing argument during the guilt-innocence phase of the

**STATE v. BROWN**

[350 N.C. 193 (1999)]

trial. On review, we conclude that the trial court properly overruled defendant's objections. The record clearly reflects that the prosecutor's comments during closing arguments were not improper. Trial counsel is allowed wide latitude in argument to the jury and may argue all of the evidence which has been presented as well as reasonable inferences which arise therefrom. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). We further emphasize that a prosecutor's statements in jury argument "must be reviewed in the overall context in which they were made and in view of the overall factual circumstances to which they referred." *State v. Penland*, 343 N.C. 634, 662, 472 S.E.2d 734, 750 (1996), *cert. denied*, 519 U.S. 1098, 136 L. Ed. 2d 725 (1997).

Defendant asserts that the prosecutor's statements to the jury that defendant called the victim in the middle of a meeting with a student to inform her husband that Leroy Wentzel was coming to visit is unsupported by the evidence. We conclude on our review of the record that this portion of the prosecutor's argument, when viewed in the context in which it was made and the overall factual circumstances to which it referred, as it must be, is based on a reasonable inference supported by the evidence. The prosecutor explained within the argument that the basis was Leroy Wentzel's testimony as to what the victim said to him alongside the highway. The prosecutor stated, "Remember what . . . Leroy said? Said they talked about, 'Should we leave it here?' Well, I guess that means that he would go home with Fred. 'Shall we have it towed? What should we do?' All of it is consistent with him expecting Leroy that night."

Defendant next argues that the prosecutor's following statements about defendant's financial motivations went outside the record: (1) that "[defendant] believed there would be mortgage insurance so she would have that house free and clear. So I argue that's another $200,000"; (2) "Pat admitted on the witness stand she called Fred's sister and said 'go to the attic . . .[;] I know there's a policy [worth] about $200,000.' . . . Pat also thought there was another $200,000 out there"; and (3) "with Fred dead, [defendant expected to receive] $332,000 plus [defendant] thought there was another $320,000 out there somewhere. That's the motive for this killing. . . . It's hundreds and thousands of dollars."

We conclude that these statements by the prosecutor in closing argument were clearly supported by the testimony at trial. The prosecutor compiled a chart indicating assets defendant was expected to

receive upon her husband's death based on testimony at trial. The prosecutor's statement relating to the mortgage insurance was based upon a handwritten note of the victim's, written to the defendant, following a surgical procedure on defendant. Finally, even assuming *arguendo* that these statements by the prosecutor could be interpreted as defendant contends, this argument is clearly not so unduly prejudicial so as to render the trial fundamentally unfair. The trial court's rulings were clearly within its discretion, and this assignment of error is overruled.

**[14]** In her fifteenth and final assignment of error, defendant asserts that the trial court erred in finding the aggravating factor, in the sentencing on her conspiracy conviction, that "[t]he defendant occupied a position of leadership or dominance of other participants in the commission of the offense." N.C.G.S. § 15A-1340.4(a)(1)(a) (1988).[1] Defendant argues that the trial court erroneously used the acts that formed the gravamen of the joined accessory murder conviction to aggravate defendant's sentence in the conspiracy case. We do not agree.

The trial court found two aggravating factors for the conspiracy conviction: (1) "[t]he defendant occupied a position of leadership or dominance of other participants in the commission of the offense," N.C.G.S. § 15A-1340.4(a)(1)(a); and (2) "[t]he offense involved an attempted taking of property of great monetary value," N.C.G.S. § 15A-1340.4(a)(1)(m). Upon finding that the aggravating factors outweighed the mitigating factors, the trial court sentenced defendant to a term of thirty years to run concurrently with the murder conviction. The aggravating factor that defendant occupied a position of leadership or dominance does not constitute an element of the contemporaneous murder conviction as accessory before the fact. This Court has stated the elements of accessory before the fact to murder are:

1) Defendant must have counseled, procured, commanded, encouraged, or aided the principal to murder the victim;

2) the principal must have murdered the victim; and

3) defendant must not have been present when the murder was committed.

*State v. Davis*, 319 N.C. 620, 624, 356 S.E.2d 340, 342 (1987).

---

1. The Fair Sentencing Act, as contained in N.C.G.S. § 15A-1340.1 through -1340.7, was repealed effective 1 October 1994, when the Structured Sentencing Act became effective for offenses occurring on or after that date. The Fair Sentencing Act applies in this case.

Thus, with the possible exception of the included required action that a defendant "commanded" the principal, as contained in the first element, accessory before the fact to murder does not in any way require that the defendant occupy a position of leadership or dominance in the commission of the crime, and while there is, in the instant case, abundant evidence that defendant procured, encouraged and even took a leadership role, there is no evidence she "commanded" the principal. To encourage or counsel another is merely to advise, inspire, stimulate, or spur on a particular course of action. *Merriam-Webster's Collegiate Dictionary* 264, 381 (10th ed. 1993). Defendant's role in the procurement of the death of her husband clearly went beyond mere counseling, procuring or encouraging the murder. However, while the evidence reflects that defendant exercised an instigating and leading role to effectively insure the murder was completed, there is no evidence or indication she "commanded" the principal. There was, in fact, evidence to the contrary, reflected in her frustration with the coconspirator. As Sheila Wentzel testified, defendant "wanted it done, she wanted Fred to be killed . . . she was angry because Leroy hadn't done it." Sheila also testified that defendant was "trying to rush" Leroy Wentzel. Finally, on the night of the murder, defendant made "arrangement to have her daughter out of the house, and she would be out of house . . . and Fred would be the only one home."

Therefore, we conclude that the trial court properly found the aggravating factor that defendant occupied a position of leadership of other participants in the commission of the conspiracy, separate and apart from her conviction of murder as an accessory. However, we further conclude that the judgment on this offense must be remanded for resentencing because the trial court consolidated it with the solicitation conviction, which we have now vacated, in imposing a single sentence of thirty years, and we cannot assume that the trial court's consideration of two offenses, as opposed to one, had no affect on the sentence imposed.

We note that on 11 August 1995, defendant filed a motion for appropriate relief, and on or about 1 May 1997, defendant filed an amended and supplemental motion for appropriate relief. These motions were heard on 12 May 1997 and were denied by order of the trial court entered 21 May 1997 upon extensive findings of fact and conclusions of law, including that the allegations contained in the motion, as amended, are without merit and subject to dismissal and that defendant has failed to establish that she is entitled to a new

trial. We further note that defendant has not raised or brought forward in her brief any assignments of error or argument with respect to such findings, conclusions or order of denial, and any matters relating thereto are deemed abandoned. N.C. R. App. P. 28(b)(5).

Accordingly, we hold that defendant's conviction of solicitation to commit murder must be vacated and the judgment thereon arrested, that the judgment on the conspiracy to commit murder conviction must be remanded for resentencing, and that in all other respects defendant has received a fair trial and proper sentence, free of prejudicial error.

NO. 94CRS20532, FIRST-DEGREE MURDER: NO ERROR.

NO. 94CRS56256, SOLICITATION TO COMMIT MURDER: CONVICTION VACATED AND JUDGMENT ARRESTED; CONSPIRACY TO COMMIT MURDER: REMANDED FOR RESENTENCING.

Justices MARTIN and WAINWRIGHT did not participate in the consideration or decision of this case.