679 A.2d 217

COMMONWEALTH of Pennsylvania, Appellee,

v.

Tony Curtis YERBY, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 26, 1995.

Decided June 18, 1996.

William E. Ruane, Lansdowne, for Yerby.

Dennis C. McAndrews, Media, Joseph J. Mittleman, Philadelphia, for Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

## OPINION OF THE COURT

CAPPY, Justice.

The issue presented in this appeal is whether Appellant's conviction for terroristic threats [1] is barred by the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution because of Appellant's previous conviction for indirect criminal contempt, which conviction resulted from the same incident that gave rise to the terroristic threats conviction. The Superior Court found that double jeopardy did not bar the conviction for terroristic threats. While we agree that double jeopardy does not here bar the prosecution for terroristic threats and, thus, affirm the result reached by the Superior Court, we do so on grounds wholly distinct from those espoused by the Superior Court.

In October, 1992, an order was issued pursuant to the Protection from Abuse Act, 23 Pa.C.S. § 6107(b)(hereinafter

1. 18 Pa.C.S. § 2706

"PFA order")[2], enjoining Appellant from "striking, threatening, abusing or harassing" his former girlfriend, Ms. Assunta Fisher, or her children. On November 1, 1992, Appellant approached Ms. Fisher as she stood in the street with her friend and her friend's children, aimed a gun at Ms. Fisher and discharged the weapon. Fortunately, Ms. Fisher was not struck by the bullet, and, instead, was able to run into a nearby alley. Appellant followed her into the alley and held the gun to her head, threatening to kill her. When Ms. Fisher refused Appellant's request to release the child she was holding, Appellant knocked the child from her arms and then choked Ms. Fisher and struck her with the gun. Appellant eventually forced Ms. Fisher into his vehicle where he again threatened to kill her. Ms. Fisher was able to throw the car keys out of a window and escape to safety in a nearby home.

Appellant was later found in Florida and in September, 1993, extradited to Pennsylvania pursuant to a warrant for his arrest issued as a result of the November 1, 1992, incident. A contempt hearing was held on October 7, 1993, following which Appellant was convicted of indirect criminal contempt of the PFA order and sentenced to three months imprisonment. This contempt conviction was based upon the events occurring on November 1, 1992.

Appellant was subsequently charged with various criminal offenses as a result of the November 1, 1992 incident involving Ms. Fisher. Those offenses included recklessly endangering another person, possession of instrument of crime, terroristic threats, unlawful restraint and aggravated assault. Appellant filed a motion to dismiss the criminal prosecution arguing that it was barred by double jeopardy. That motion was denied. In its opinion in support of that ruling, the trial court found that double jeopardy protections did not apply to criminal

**2.** 23 Pa.C.S. § 6107(b) provides:

**(b) Temporary orders**—If a plaintiff petitions for temporary order for protection from abuse and alleges immediate and present danger of abuse to the plaintiff or minor children, the court shall conduct an ex parte proceeding. The court may enter such a temporary order as it deems necessary to protect the plaintiff or minor children when it finds they are in immediate and present danger of abuse.

contempt proceedings. A jury ultimately acquitted Appellant of aggravated assault, but convicted him of the remaining above listed offenses, including terroristic threats. He was then sentenced to thirty (30) to eighty-four (84) months incarceration. The Superior Court affirmed the judgment of sentence. This appeal followed.

Appellant contends that the United States Supreme Court decision in *United States v. Alvin J. Dixon and Michael Foster*, 509 U.S. 688, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993) (henceforth *"Dixon and Foster"*) dictates that his conviction for terroristic threats is barred by double jeopardy principles as a result of his previous conviction for contempt, which conviction was based, at least in part, upon the same offense.[3] While this court addressed the issue of whether a contempt conviction barred a later prosecution on a substantive criminal offense in *Commonwealth v. Allen*, 506 Pa. 500, 486 A.2d 363 (1984), *cert. denied* 474 U.S. 842, 106 S.Ct. 128, 88 L.Ed.2d 105 (1985), this is the first time that this precise issue has been presented to our court since the United States Supreme Court handed down its decision in *Dixon and Foster*. As the following discussion evinces, the decision in *Dixon and Foster* requires that we re-examine our decision in *Allen*.

The facts in *Dixon and Foster* are similar to those presented in the instant matter insofar as both Dixon and Foster had been tried for criminal contempt for violating court orders that prohibited them from engaging in conduct that then formed the basis for a later criminal prosecution.[4] In deter-

---

3. As Appellant raises only the issue of whether his prosecution is barred under the Double Jeopardy Clause of the Fifth Amendment, our decision herein is limited to that Constitutional provision. We shall not address, nor shall our decision be deemed to include an analysis of, our state constitutional protection against double jeopardy as set forth in Article I, Section 10 of the Pennsylvania Constitution.

4. Dixon had been arrested for second-degree murder and released on bond. His release form specified that he was not to commit any criminal offense and that any violation of the conditions of release would subject him to, *inter alia*, prosecution for contempt of court. While awaiting trial, Dixon was arrested and indicted for possession of cocaine with intent to distribute. A contempt hearing was held following which the court determined that the government had established beyond a reasonable doubt that Dixon had possessed drugs with the

mining whether the later prosecutions were barred by the Double Jeopardy Clause of the Fifth Amendment,[5] a majority of the United States Supreme Court held that the Double Jeopardy Clause attaches to criminal contempt prosecutions just as it does in other criminal prosecutions. A majority of that Court also held that the sole test to be applied in determining whether a subsequent prosecution will be barred by double jeopardy is the "same-elements" or *"Blockburger* test" first enunciated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

■ Under this test, if each offense requires proof of an element that the other does not, the offenses are separate and double jeopardy does not apply. If, however, the offenses have identical elements, or if one offense is a lesser included offense of another, the subsequent prosecution is barred. *Id.* at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. Stated another way, unless each of the two offenses for which the defendant is punished or tried contains an element not contained in the other, they are the same offenses and successive prosecution is barred.

intent to distribute and accordingly, held Dixon in contempt of the earlier release order. Dixon then moved to have the cocaine indictment dismissed on the basis of double jeopardy.

Foster, on the other hand, was the subject of a civil protection order (CPO) which required that he not molest, assault, threaten or physically abuse his estranged wife. His wife filed several separate motions to have Foster held in contempt for numerous alleged violations of the CPO, three of which involved instances of alleged threats and two of which involved alleged assaults. At the ensuing bench trial, the court informed Mrs. Foster that with respect to the assault charges she would have to prove first that there was a CPO and then, that an assault as defined by the criminal code in fact occurred. At the conclusion of the trial, the court found Foster guilty of contempt of the CPO with respect to two specific incidents of assault, but not guilty on other grounds. The United States Attorney's Office subsequently obtained an indictment charging Foster with simple assault, threatening to injure another and assault with intent to kill, all of which were based upon the same events which gave rise to the contempt proceedings. Like Dixon, Foster moved to dismiss the indictment claiming double jeopardy.

5. The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."

While a clear majority of the Court in *Dixon and Foster* adopted *Blockburger* as the appropriate test, the Justices were, however, unable to garner a majority vote as to the precise application of the same-elements test.[6]

■ In the instant matter, the Superior Court determined that since a majority of the United States Supreme Court was unable to agree on the precise application of the *Blockburger* test, it would apply the reasoning expressed by Chief Justice Rehnquist in his concurring and dissenting opinion in *Dixon and Foster* which was joined by Justices O'Connor and Thomas. The essence of that concurring and dissenting opinion is that in applying the *Blockburger* test, a court must compare the elements of contempt of court in the most literal sense and not the terms of the particular court order involved, with the elements of the substantive criminal charges involved. According to Chief Justice Rehnquist, contempt of court will always comprise the following two elements: (1) a court order made known to the defendant, and (2) willful violation of that order. Under this approach, none of the substantive criminal prosecutions which followed the criminal contempt would violate double jeopardy.

In the case *sub judice*, the Superior Court adopted the reasoning expressed by Chief Justice Rehnquist, finding it to be the "more sound approach" and one that also aligns itself with the position expressed by this court in *Allen*, 506 Pa. 500, 486 A.2d 363 (1984).[7] The Superior Court panel concluded at

6. What emerges from *Dixon and Foster* is far from clear. There are five separate opinions in *Dixon and Foster*, each of which expresses a different theory on not only the application of the *Blockburger* test, but also whether that test alone should be the sole means of determining whether a successive prosecution is barred by double jeopardy and whether contempt convictions give rise to double jeopardy analysis. Each of the majority holdings of the Court in *Dixon and Foster* was garnered by a different majority of the Court and each was constructed by interweaving the various opinions.

7. In *Allen*, the defendant had been ordered pursuant to the PFA order to refrain from physically abusing his wife and/or their children. Charges of simple assault and trespass were subsequently filed against the defendant as a result of his forcible entry into his wife's home and his concomitant abuse of her. Several days later, the defendant was charged with contempt of the PFA order. Following a hearing, the

one point that since a majority of the United States Supreme Court continues to follow *Blockburger* and because *Allen* was decided pursuant to *Blockburger, Allen* continues to remain good law. The Commonwealth, in the instant appeal, argues this point as well.

Indeed, this court's previous decision in *Allen* expressed a view remarkably similar to the view expressed by Chief Justice Rehnquist in his concurring and dissenting opinion in *Dixon and Foster.* However, while this court's holding in *Allen,* that the applicable federal test is that of *Blockburger,* is sound, the rationale and analysis of the *Allen* decision has been specifically refuted by a majority of the Supreme Court in *Dixon and Foster.*

As noted above, a majority of the Court in *Dixon and Foster* made clear that criminal contempt convictions *do* give rise to double jeopardy protections. While both this court's *Allen* decision and the opinion expressed by Chief Justice Rehnquist in *Dixon and Foster* ostensibly support such a position, the analysis as expressed in both of those opinions speaks otherwise and application of this approach renders double jeopardy protections illusory at best.

In *Allen,* this court compared the above-listed literal elements of contempt against those of simple assault, which was the substantive criminal offense at issue, finding, of course, that those two elements, knowledge of a court order and

defendant was found to be in contempt of the PFA order. Another criminal complaint, this one charging the defendant with raping his wife during the course of his earlier assault and trespass, was then filed against the defendant. All three criminal charges were consolidated for trial. Defendant filed an Omnibus Pretrial Motion seeking to quash the three informations claiming that they were barred by double jeopardy. The trial court denied the motion and the Superior Court affirmed as to the trespass and rape charges, but reversed on the simple assault charge finding that it was, indeed, barred by double jeopardy. On appeal, this court held, in relevant part, that indirect criminal contempt and simple assault were separate offenses under the *Blockburger* test because (1) the two offenses contained the "requisite 'separate elements'" since the "defendant could have willfully violated the court order by any number of actions," and (2) the two offenses served distinct purposes in that the purpose of a contempt order is the protection of our judicial system from abuse, not punishment for a criminal act. *Allen,* at 514, 486 A.2d at 370.

willful violation thereof, were not necessary to a finding of simple assault. Obviously, viewing the elements of *every* contempt order in this manner will result in there never being a double jeopardy bar under the *Blockburger* same-elements test, since neither of the above elements will ever be necessary in proving a substantive criminal offense and every substantive criminal offense will contain additional elements. Clearly, the *Allen* court's approach, and Chief Justice Rehnquist's similar approach, while purporting to embrace the concept that criminal contempt convictions implicate double jeopardy protections, rings hollow. As such, the view as expressed in *Allen* is untenable given the United States Supreme Court's decision in *Dixon and Foster* that criminal contempt convictions do give rise to double jeopardy protections.

The further reasoning of this court in *Allen* is likewise indefensible given the Supreme Court's decision in *Dixon and Foster*. In ruling that the prosecution for the substantive offense of simple assault after a finding of contempt, which finding was based at least in part on that same assaultive behavior, was not barred, this court in *Allen* placed great emphasis upon the fact that the two offenses seek to vindicate distinct interests. In essence, the *Allen* court held that contempt and the underlying substantive crime constitute two separate offenses because they involve injury to two distinct interests, the one being the interest of the court in protecting its dignity and preserving its authority and the other being the public's interest in punishing criminal conduct.[8]

Such a position was, however, explicitly refuted by a majority of the Court in *Dixon and Foster*. Justice Scalia in his Opinion Announcing the Judgment of the Court in *Dixon and Foster*, wherein he was joined by Justice Kennedy, unequivocally states that such a distinction "is of no moment for purposes of the Double Jeopardy Clause, the text of which looks to whether the *offenses* are the same, not the interests that the offenses violate." *Dixon and Foster*, 509 U.S. at 699,

---

8. The Commonwealth in the instant matter similarly argues that double jeopardy does not here apply since the two offenses seek to protect distinct interests.

113 S.Ct. at 2858, 125 L.Ed.2d at 570. Justice White, with whom Justices Stevens and Souter joined, in a concurring and dissenting opinion further elucidated this position, focusing on the fact that in instances involving successive prosecutions as opposed to multiple punishments, it is the· interests of the defendant that are paramount, and on the fact that while there may be two distinct interests at stake, such does not necessarily render the prosecutions any less an exercise of the sovereign's power. *Dixon and Foster,* 509 U.S. at 722–26, 113 S.Ct. at 2870–71, 125 L.Ed.2d at 586.

In sum, since a majority of the United States Supreme Court in *Dixon and Foster* failed to embrace the analysis suggested by our court in *Allen* with respect to the application of *Blockburger,* and explicitly rejected the reasoning and analysis of *Allen* with respect to the vindication of the distinct interests involved, this court's decision therein can no longer be deemed valid. Accordingly, that decision is hereby overruled.[9]

■ Given the foregoing, we must now undertake to determine whether Appellant's subsequent prosecution for terroristic threats is barred under the same-elements test as a result of his conviction for criminal contempt. As noted above, the United States Supreme Court has provided no clear majority view as to how the same-elements test should be applied in such circumstances. We think the more sound approach, and the one that adheres most to the concerns behind the protection against successive prosecutions, is one that looks to the specific contempt order and the elements of the violated condition(s) of that order. In other words, we must look to the specific offenses at issue in the contempt proceeding and compare the elements of those offenses with the elements of the subsequently charged criminal offenses. If they are the same, or if one is a lesser included offense of the other, double

9. We would note that notwithstanding its panel decision in the instant matter to the contrary, a different panel of the Superior Court, in a published opinion written by Judge DelSole, has recently held that the reasoning and result of *Allen* is untenable in light of the Supreme Court's decision in *Dixon and Foster. See, Commonwealth v. Decker,* 445 Pa.Super. 101, 664 A.2d 1028 (1995).

jeopardy attaches and the subsequent prosecution is barred. The focus, then, is on the offense(s) for which the defendant was actually held in contempt.[10]

Again, it is the elements of the *offenses* for which the defendant has been found guilty in the contempt proceedings and the subsequent criminal proceedings to which the *Blockburger* test will be applied. Rather than compare the general elements of contempt of court, we compare the elements of the offense actually deemed to have been violated in that contempt proceeding against the elements of the substantive criminal offense(s). For instance, returning to the facts in *Dixon and Foster*, at the contempt hearing, Dixon was found to have possessed drugs with the intent to distribute thereby violating the conditions of his contempt order. Because the subsequent criminal prosecution was for that precise offense, possession with intent to distribute, under *Blockburger*, the offenses were identical and double jeopardy barred that prosecution. Similarly, Foster was found in contempt after the court found he had committed the crime of simple assault. As Justice Scalia notes, while it is not obvious that the word "assault" as set forth in the contempt order bore the same meaning as the crime of simple assault, the court imposing the contempt construed it in that manner. *Dixon and Foster*, 509 U.S. at 700, n. 3, 113 S.Ct. at 2858, n. 3, 125 L.Ed.2d at 570, n. 3. As such, the subsequent prosecution for the substantive crime of simple assault was barred under the *Blockburger* test.

■ It is axiomatic that in instances of successive prosecution, the prohibition against twice being placed in jeopardy focuses exclusively on the interests of the *particular* defendant. The double jeopardy guarantee is meant to deal with *actual* defendants and *actual* circumstances. It is the interests of the *defendant* that are at stake. As the United States Supreme Court has stated:

**10.** At least five of the Justices in *Dixon and Foster* espoused the position that the courts are to examine the content of the particular court order violated by the defendant rather than the more general, or generic, statutory elements of criminal contempt.

The constitutional prohibition against "double jeopardy" was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.... The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204 (1957). To apply the *Blockburger* test in the literalist and formalistic manner espoused by the Superior Court would simply undercut the very foundation of the guarantee sought to be protected. Although the Superior Court appears to rely on what it believes to be the focus of Mr. Chief Justice Rehnquist's opinion in *Dixon and Foster,* it would be folly to conclude that the leader of our nation's highest court is not fully aware of the true focus of the law of double jeopardy and successive prosecution. In short, because the double jeopardy guarantee is meant to deal with particular defendants and *actual* circumstances, we conclude that an approach that scrutinizes anything other than the actual offense or offenses prosecuted in the contempt proceeding, undermines that very constitutional guarantee being questioned.[11]

Application of this test thus requires that we review the contempt proceeding which was premised on this same incident involving Ms. Fisher and Appellant and which underlies this criminal conviction. As noted previously, the PFA order entered against Appellant in October, 1992, forbade him

---

**11.** Other courts which have wrestled with the precise holding of *Dixon and Foster,* especially with respect to the manner in which the *Blockburger* test is to be applied in these situations, have reached similar results. *See, e.g. Florida v. Miranda,* 644 So.2d 342 (1994); *People v. Stenson,* 902 P.2d 389 (1994); *People v. Allen,* 868 P.2d 379 (1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 129, 130 L.Ed.2d 73 (1994).

from "striking, threatening, abusing or harassing" Ms. Fisher. At the indirect criminal contempt hearing held on October 7, 1993, the trial court found that the contempt order had been violated as a result of the incident which occurred on November 1, 1992. The transcript of that hearing does not, however, reveal the precise basis for the trial court's finding of contempt.[12] Following the testimony, which essentially was comprised of Ms. Fisher's account of the incident of November 1, 1992, which was consistent with the facts as previously set forth in this opinion, and Appellant's testimony wherein he denied even being present in Pennsylvania on November 1, 1992, the court merely stated that Appellant had violated the PFA and accordingly, that he was in contempt thereof.

Section 2706 of the Crimes Code states, in relevant part, that a person is guilty of committing terroristic threats if he threatens to commit any crime of violence with intent to terrorize another ... or in reckless disregard of the risk of causing such terror or inconvenience. Clearly, given the facts, the court may have found Appellant in contempt as a result of either his physical assault upon Ms. Fisher or his threats to kill her or even both. However, based on the record presented to our court, there is no indication that the trial court, at the contempt hearing, ever found Appellant guilty of terroristic threats. Even if the finding of contempt was based on the fact that Appellant threatened to kill Ms. Fisher, the trial court need not have found that the elements of the crime of terroristic threats were established since the PFA order prohibited Appellant not from committing the crime of terroristic threats, but only from "threatening" Ms. Fisher. In other words, the PFA order at issue here did not include the

12. We regret that the only information available to this court respecting the contempt hearing is a copy of the transcript from the October 9, 1993 hearing which copy was provided to us by the District Attorney's Office. The District Attorney, in the instant criminal matter, not only cited to specific pages of that transcript in its brief to this court, but also listed the criminal contempt case in its "Table of Authorities." Although we requested the original record from the Court of Common Pleas of Delaware County, that court has been unable to comply with our request and has, instead, informed us that they are unable to locate the record.

elements of terroristic threats. Accordingly, Appellant's subsequent prosecution for terroristic threats is not barred.

The order of the Superior Court affirming the judgment of sentence is affirmed.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., who was sitting by designation, did not participate in the decision of this case.