STATE OF NORTH CAROLINA v. RAYMOND FREDRICK GILLEY, Defendant

No. COA98-1124

(Filed 16 November 1999)

## 1. Constitutional Law— double jeopardy—violation of domestic violence protective order—criminal contempt— convictions for substantive offenses

In a case where defendant was prosecuted for the substantive criminal offenses of first-degree kidnapping, domestic criminal trespass, communicating threats, assault on a female, and first-degree burglary following an adjudication of criminal contempt based upon violation of a domestic violence protective order, defendant's conviction of assault on a female violated defendant's Fifth Amendment double jeopardy rights because a comparison of the offense actually deemed to have been violated in the contempt proceeding versus the elements of the substantive criminal offenses reveals the prohibition in the protective order that defendant not assault his estranged wife met the same legal elements necessary for assault on a female under N.C.G.S. § 14-33(b)(2). However, defendant's convictions of first-degree kidnapping, domestic criminal trespass, communicating threats, and nonfelonious breaking or entering did not violate defendant's double jeopardy rights because these crimes contained elements not present in the domestic violence protective order.

## 2. Sentencing— non-vacated convictions—remand for resentencing

In a case where the double jeopardy clause constituted a bar to defendant's conviction for assault on a female, but not for the other convictions for first-degree kidnapping, domestic criminal trespass, communicating threats, and non-felonious breaking or entering, the non-vacated convictions must be remanded for resentencing because it cannot be assumed that the trial court will reach the same sentencing result absent consideration of the assault on a female conviction.

Appeal by defendant from judgment entered 15 August 1996 by Judge Jerry Cash Martin in Guilford County Superior Court. Heard in the Court of Appeals 19 May 1999.

*Attorney General Michael F. Easley, by Assistant Attorney General Teresa L. Harris, for the State.*

*Clifford, Clendenin, O'Hale and Jones, L.L.P., by Walter L. Jones, for defendant-appellant.*

JOHN, Judge.

Defendant appeals judgment entered upon convictions by a jury of first degree kidnapping, domestic criminal trespass, communicating threats, misdemeanor breaking and entering, and assault on a female. We vacate the latter conviction.

The State's evidence at trial tended to show the following: Defendant and Vicky Gilley (Mrs. Gilley) were married in March 1989 and separated 5 February 1995. Mrs. Gilley continued to reside in the marital residence with the couple's daughter and Mrs. Gilley's twin daughters from a previous marriage. After two violent incidents between defendant and Mrs. Gilley, one occurring at the former marital residence and the other at the home of Mrs. Gilley's parents, a domestic violence protective order (the order), effective until 16 March 1996, was issued 16 March 1995 and served upon defendant that same date.

Notwithstanding, defendant entered the marital residence on 7 January 1996 armed with a knife. Following a physical altercation with Mrs. Gilley, defendant forced her into his truck, but she jumped out and escaped while he was operating the vehicle.

On 23 January 1996, Mrs. Gilley filed a Motion for Order to Show Cause. Plaintiff alleged defendant "kicked the [house] door in," "physically abused" her, "ripped off [her] clothes," "kidnapped [her] from the residence," and "abducted the [couple's] daughter—Erica." At a hearing conducted in Guilford County District Court, defendant admitted he went to Mrs. Gilley's residence on 7 January 1996, kicked in the door, "slapp[ed] Vicky around," ripped off her clothes, and took her outside to his truck, and that he knew the order was in effect when he committed the foregoing acts. Defendant thereupon was ordered committed to the Guilford County jail for 30 days based upon the court's determination he had "willfully failed to comply with the Domestic Violence Protective Order and [wa]s in Criminal Contempt."

On 18 March 1996, defendant was indicted upon charges of first degree burglary, first degree kidnapping, domestic criminal trespass,

communicating threats, and assault on a female in connection with the 7 January 1996 incident. On 8 August 1996, defendant filed a "Plea of Former Jeopardy," moving for dismissal (defendant's motion) of all criminal charges except that of communicating threats based upon the principle of double jeopardy. The trial court rejected defendant's motion and defendant was subsequently convicted by a jury at trial on all counts save that of burglary. In the latter instance, he was found guilty of non-felonious breaking or entering. The offenses were consolidated for judgment and defendant was ordered "imprisoned for a minimum term of 145 months [and] for a maximum term of 183 months." Defendant timely appealed.

On appeal, defendant contends the trial court erred in failing to grant his motion to dismiss. We agree in limited part.

[1] In defendant's motion, he alleged prosecution of the criminal charges would violate the double jeopardy prohibitions contained in "the North Carolina Constitution and the Constitution of the United States." *See* U.S. Const. amend. V and N.C. Const. art. I, § 19. Neither defendant's assignment of error nor the arguments in his appellate brief address provisions of our North Carolina Constitution. Accordingly, any argument based thereon is not properly before us. *See* N.C.R. App. P. 10(a) (scope of appellate review "confined to . . . consideration of those assignments of error set out in the record on appeal") and N.C.R. App. P. 28(b)(5) ("[a]ssignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned"). Nonetheless, we note that

> [b]oth the Fifth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution protect against multiple punishments for the same offense.

*State v. Elliott*, 344 N.C. 242, 277, 475 S.E.2d 202, 218 (1996), *cert. denied*, 520 U.S. 1106, 137 L. Ed. 2d 312 (1997).

In pertinent part, the Fifth Amendment to the United States Constitution (the Double Jeopardy Clause) provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause protects against

> (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.

*State v. Gardner,* 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986) (citations omitted); *North Carolina v. Pearce,* 395 U.S. 711, 717, 23 L. Ed. 2d 656, 664-65 (1969), *overruled in part on other grounds, Alabama v. Smith,* 490 U.S. 794, 802, 104 L. Ed. 2d 865, 874-75 (1989). Criminal contempt enforced through nonsummary proceedings, as in the instant case, is "a crime in the ordinary sense," *Bloom v. Illinois,* 391 U.S. 194, 201, 20 L. Ed. 2d 522, 528 (1968), and therefore the prohibition against "a second prosecution for the same offense after conviction," *Gardner,* 315 N.C. at 451, 340 S.E.2d at 707, is implicated herein; *see United States v. Dixon,* 509 U.S. 688, 696, 125 L. Ed. 2d 556, 568 (1993) (constitutional protection of the Double Jeopardy Clause applies to nonsummary criminal contempt prosecutions).

Defendant's argument presents an issue of first impression in North Carolina, *i.e.,* the extent to which the Double Jeopardy Clause relates to subsequent prosecution for a substantive criminal offense following an adjudication of criminal contempt based upon violation of a court order forbidding such criminal act. As this Court has noted, " 'the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage,' " and is applicable to the States through the Fourteenth Amendment. *State v. Perry,* 52 N.C. App. 48, 55, 278 S.E.2d 273, 279 (1981), *modified in part on other grounds,* 305 N.C. 225, 287 S.E.2d 810 (1982) (quoting *Benton v. Maryland,* 395 U.S. 784, 794, 23 L. Ed. 2d 707, 716 (1969)). Accordingly, the validity of defendant's convictions following his being held in contempt " 'must be judged . . . under [the United States Supreme] Court's interpretations of the Fifth Amendment double jeopardy provision.' " *Id.* (quoting *Benton,* 395 U.S. at 796, 23 L. Ed. 2d at 717). *See State v. McDowell,* 310 N.C. 61, 74, 310 S.E.2d 301, 310 (1984), *overruled on other grounds, McDowell v. Dixon,* 858 F.2d 945 (4th Cir. 1988) ("[s]tate courts are no less obligated to protect and no less capable of protecting a defendant's federal constitutional rights than are federal courts . . . [and] [i]n performing this obligation a state court should exercise and apply its own independent judgment, treating . . . decisions of the United States Supreme Court as binding").

The most recent "binding," *id,* decision of the United States Supreme Court (the Supreme Court) pertinent to our inquiry herein is that of *United States v. Dixon,* 509 U.S. 688, 125 L. Ed. 2d 556 (1993), in actuality two cases joined for appeal which resulted in a multiplicity of opinions. The majority holdings were constructed by interweaving the Supreme Court's five separate opinions.

In *Dixon*, a majority of the Supreme Court held that the sole test applied to determine whether a successive prosecution—based upon conduct which had resulted in an adjudication of contempt—is barred by the Double Jeopardy Clause was the "same-elements" test set out in *Blockburger v. United States*, 284 U.S. 299, 76 L. Ed. 306 (1932):

> The same-elements test, sometimes referred to as the "Blockburger" test, inquires whether each offense contains an element not contained in the other; if not, they are the "same offence" and double jeopardy bars additional punishment and successive prosecution.

*Dixon*, 509 U.S. at 696, 125 L. Ed. 2d at 568.

However, the Supreme Court had written in *Blockburger* that

> [t]he applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.

*Blockburger*, 284 U.S. at 304, 76 L. Ed. at 309. A majority of the justices in *Dixon* refined *Blockburger* by overruling *Grady v. Corbin*, 495 U.S. 508, 109 L. Ed. 2d 548 (1990), to the extent that decision required, in addition to the "same-elements" test, subsequent prosecution to satisfy a "same-conduct" test, *Dixon*, 509 U.S. at 704, 125 L. Ed. 2d at 573. According to *Dixon*, the "same-conduct" test prohibited a second prosecution if,

> to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted.

*Id.* at 697, 125 L. Ed. 2d at 568 (quoting *Grady*, 495 U.S. at 510, 109 L. Ed. 2d at 557).

Although a majority of the Supreme Court in *Dixon* agreed the *Blockburger* test was equivalent to the "same-elements" test, differing applications thereof were proffered in the Court's multiple opinions. In rendering the opinion of the Supreme Court on most issues, Justice Scalia emphasized examination of the content and language of the previous court order, while Chief Justice Rehnquist, in an opinion concurring in part and dissenting in part, focused upon "the elements of contempt of court in the ordinary sense," *Dixon*, 509 U.S. at 714,

125 L. Ed. 2d at 579, as compared with the elements of the substantive crime.

Justice Scalia concluded that defendant Dixon's prior "conviction" of criminal contempt for having violated a court order prohibiting "comm[ission] [of] any criminal offense," *id.* at 691, 125 L. Ed. 2d at 565, which "conviction" was based upon Dixon's possession of drugs with the intent to distribute, barred his subsequent prosecution on a charge of possession of cocaine with intent to distribute, *id.* at 698-700, 125 L. Ed. 2d at 569-70. Justice Scalia reasoned that

> [b]ecause Dixon's drug offense did not include any element not contained in his previous contempt offense, his subsequent prosecution violate[d] the Double Jeopardy Clause.

*Id.* at 700, 125 L. Ed. 2d at 570.

As to defendant Foster, Justice Scalia determined Foster's subsequent prosecution on an indictment charging assault,

> based on the same event that was the subject of his prior contempt conviction for violating the provision of the [civil protective order] forbidding him to commit simple assault,

*id.*, under the identical statute the trial court construed to govern his indictment, *id.* at 700 n.3, 125 L. Ed. 2d at 570 n.3, "fail[ed] the *Blockburger* test, and [wa]s barred," *id.* at 700, 125 L. Ed. 2d at 570.

On the other hand, Chief Justice Rehnquist noted the elements of contempt of court are 1) an extant court order made known to the defendant, and 2) willful violation thereof by the defendant. *Id.* at 716, 125 L. Ed. 2d at 580. He then asserted,

> it is clear that the elements of the governing contempt *provision* are entirely different from the elements of the substantive crimes,

*id.* (emphasis in original), and that

> [n]either of th[e contempt] elements is necessarily satisfied by proof that a defendant has committed the substantive offenses of assault or drug distribution. Likewise, no element of either of those substantive offenses is necessarily satisfied by proof that a defendant has been found guilty of contempt of court,

*id.* at 716, 125 L. Ed. 2d at 581. According to Chief Justice Rehnquist, therefore, "none of the criminal prosecutions in this case were barred under *Blockburger*." *Id.* at 713, 125 L. Ed. 2d at 579.

In selecting which approach to apply herein, we are advertent to the State's assertion of a distinction between the interests served by criminal contempt proceedings and those served through prosecution for substantive criminal offenses. According to the State, a contempt proceeding

> preserve[s] the power and . . . vindicate[s] the dignity of the court and . . . punish[es] for disobedience of its processes or orders,

while a criminal prosecution is "designed to seek conviction and punishment for violations of the criminal law."

This stance, however, was disapproved by a majority of the Supreme Court in *Dixon. Commonwealth v. Yerby*, 679 A.2d 217, 221 (Pa. 1996). Justice Scalia wrote that

> the distinction is of no moment for purposes of the Double Jeopardy Clause, the text of which looks to whether the offenses are the same, not the interests that the offenses violate.

*Dixon*, 509 U.S. at 699, 125 L. Ed. 2d at 570. Further, according to Justices White, Stevens and Souter, concurring in part and dissenting in part in *Dixon*, although two interests may be implicated, the circumstance that alleged criminal conduct constitutes a violation of a court order does not "render the prosecution any less an exercise of the sovereign power of the United States." *Id.* at 726, 125 L. Ed. 2d at 587.

The State also contends legislative intent to punish contempt violations and substantive offenses separately must be considered and should be determinative of the double jeopardy issue if that intent is unambiguous. The State relies upon *State v. Gardner*, 315 N.C. 444, 340 S.E.2d 701 (1986), for this proposition; however, such reliance is misplaced.

*Gardner* involved "multiple punishments for the same offense," *id.* at 451, 340 S.E.2d at 707, and our Supreme Court held that clear legislative intent to punish cumulatively must be respected, "regardless of the outcome of the application of the *Blockburger* test," *id.* at 455, 340 S.E.2d at 709. Significantly, however, the distinction between cases involving multiple punishments in a single prosecution and those involving successive prosecutions, as in the instant case, was articulated in *Gardner* as follows:

> [s]uccessive-prosecution cases involve the core values of the Double Jeopardy Clause, the common-law concepts of *autrefois*

*acquit* and *convict.* Where successive prosecutions are involved, the Double Jeopardy Clause protects the individual's interest in not having to twice "run the gauntlet," in not being subjected to "embarrassment, expense and ordeal," and in not being compelled "to live in a continuing state of anxiety and insecurity," with enhancement of the "possibility that even though innocent he may be found guilty."

. . . .

Different interests are involved when the issue is purely one of multiple punishments, without the complications of a successive prosecution. The right to be free from vexatious proceedings simply is not present. The only interest of the defendant is in not having more punishment imposed than that intended by the legislature. The intent of the Legislature, therefore, is determinative.

*Id.* at 452, 340 S.E.2d at 707 (quoting *People v. Robideau,* 355 N.W.2d 592, 602-03 (Mich. 1984) (citations omitted)); *see also Ohio v. Johnson,* 467 U.S. 493, 499, 81 L. Ed. 2d 425, 433 (1984) (protection against cumulative punishments "designed to ensure that the sentencing discretion of courts is confined to the limits established by the legislature"). Therefore, where successive prosecution is initiated following a previous conviction, "the core values of the Double Jeopardy Clause," *Gardner,* 315 N.C. at 452, 340 S.E.2d at 707, control in determining whether the offenses are the same, *see Dixon,* 509 U.S. at 724, 125 L. Ed. 2d at 586. However, an analysis according deference to expressed legislative intent is applicable only to cases involving multiple punishments. *See Gardner,* 315 N.C. at 452, 340 S.E.2d at 707.

Further, comparison of the literal elements of contempt with the elements of the substantive criminal offense as propounded by Chief Justice Rehnquist would nearly always result in the conclusion that neither of the general elements of contempt was necessary to prove the substantive criminal offense, and that the latter contained additional elements beyond those required for contempt. *See Yerby,* 679 A.2d at 220-22 (approach of Chief Justice Rehnquist, "while purporting to embrace the concept that criminal contempt convictions implicate double jeopardy protections, rings hollow" and "renders double jeopardy protections illusory at best"; "approach that scrutinizes anything other than the actual offense or offenses prosecuted in the contempt proceeding, undermines th[e] very constitutional guarantee being questioned").

In short, decisions of the Supreme Court are "binding" upon us in the area of constitutional interpretation, *McDowell*, 310 N.C. at 74, 310 S.E.2d at 310, and we therefore adopt the approach enunciated by Justice Scalia in *Dixon* for a majority of the Supreme Court, *see Perry*, 52 N.C. App. at 55, 278 S.E.2d at 279 (citation omitted) ("validity of defendant's dual convictions . . . must be judged" by our state courts according to U.S. Supreme Court's "interpretations of the Fifth Amendment double jeopardy provision"). Thus, under the circumstances *sub judice*, rather than comparison of the general literal elements of contempt with elements of the subsequent substantive criminal offense, the test involves comparison of

> the elements of the offense actually deemed to have been violated in th[e] contempt proceeding against the elements of the substantive criminal offense(s).

*Yerby*, 679 A.2d at 222.

> In other words, we must look to the specific offenses at issue in the contempt proceeding and compare the elements of those offenses with the elements of the subsequently charged criminal offenses . . . . The focus . . . is on the offense(s) for which the defendant was actually held in contempt.

*Id.* at 221. Such an approach follows the position of at least five justices in *Dixon, see id.* at 221 n.10, and best ensures protection of "the core values of the Double Jeopardy Clause," *Gardner*, 315 N.C. at 452, 340 S.E.2d at 707; *see also State v. Gonzales*, 940 P.2d 185, 187 (N.M. Ct. App.), *cert. denied*, 938 P.2d 204 (N.M. 1997); *Yerby*, 679 A.2d at 221; *State v. Miranda*, 644 So.2d 342, 344 (Fla. Dist. Ct. App. 1994); *People v. Stenson*, 902 P.2d 389, 390-91 (Colo. Ct. App. 1994); *People v. Allen*, 868 P.2d 379, 381 (Colo. 1994), *cert. denied*, 513 U.S. 842, 130 L. Ed. 2d 73 (1994).

In the instant case, defendant was convicted of assault on a female, first degree kidnapping, non-felonious breaking and entering, domestic criminal trespass, and communicating threats. The indictments were handed down after defendant had served a thirty-day prison sentence pursuant to an adjudication of criminal contempt based upon his violation of the protective order dealing with the same conduct. Defendant has conceded that his plea of former jeopardy was inapplicable to the charge of communicating threats. Our review is therefore limited to the remaining four offenses.

The protective order decreed, *inter alia:*

1. The defendant shall not assault, threaten, abuse, follow, harass, or in any way interfere with [Mrs. Gilley];

2. The defendant shall not assault, threaten, abuse, follow, harass, or in any way interfere with any of the minor children who are currently in the physical custody of [Mrs. Gilley];

. . . .

4. The defendant shall stay away from the parties' residence[.]

Under N.C.G.S. § 14-33(b)(2) (1993), the essential elements of assault on a female are (1) assault (2) upon a female person by a male person. *State v. Craig*, 35 N.C. App. 547, 549, 241 S.E.2d 704, 705 (1978). Assault is defined as

an overt act or an attempt, or the unequivocal appearance of an attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or menace of violence must be sufficient to put a person of reasonable firmness in fear of immediate bodily harm.

*State v. Jeffries*, 57 N.C. App. 416, 418, 291 S.E.2d 859, 860-61 (1982).

The record before us contains no transcript of the contempt proceeding and the 28 February 1996 contempt order recites only that "[t]he defendant willfully failed to comply with the Domestic Violence Protective Order and is in Criminal Contempt." It is therefore unclear as to whether defendant was adjudicated in contempt for violation of a single prohibition in the order or for several or all. Moreover, the protective order specifically referenced none of the substantive elements of assault on a female, but rather simply directed in general terms that defendant "not assault, threaten, abuse . . . or in any way interfere" with Mrs. Gilley.

Nonetheless, in our review of defendant's subsequent conviction for assault on a female, any ambiguity surrounding the phrase "assault" in the order and the terseness of the contempt judgment must be construed in favor of defendant. *See Dixon*, 509 U.S. at 724, 125 L. Ed. 2d at 586 ("interests of the defendant are of paramount concern"), and *O'Briant v. O'Briant*, 313 N.C. 432, 435, 329 S.E.2d 370, 373 (1985) ("criminal contempts are crimes, and accordingly, the accused is entitled to the benefits of all constitutional safeguards"), and *see Gardner*, 315 N.C. at 452, 340 S.E.2d at 707. We therefore con-

clude the prohibition in the protective order that defendant, a male, not assault Mrs. Gilley, a female, met the legal elements necessary for assault on a female under G.S. § 14-33(b)(2), and that defendant's subsequent prosecution on such charge was barred by the Double Jeopardy Clause. Accordingly, under the circumstances of this case, defendant's conviction for assault on a female must be vacated.

Prior to discussing defendant's remaining convictions, we note that although the Supreme Court in *Dixon* held further prosecution of defendant Foster on the charge of simple assault was barred by the Double Jeopardy Clause, the Court found no error regarding his subsequent conviction of assault with intent to kill. *See Dixon*, 509 U.S. at 701-02 & n.7, 125 L. Ed. 2d at 571 & n.7. Query then as to the result under the facts *sub judice* had defendant subsequently been convicted of assault with a deadly weapon as opposed to assault on a female.

In any event, as to the charges of kidnapping, non-felonious breaking or entering, and domestic criminal trespass, we hold there was no error in regards to the convictions thereon. For example, the order expressly prohibited defendant from "interfer[ing]" with and "follow[ing]" Mrs. Gilley. Such language does not encompass the elements required under N.C.G.S. § 14-39 (1993) for first degree kidnapping:

> a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person . . . shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person.
>
> b) If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree. . . .

G.S. § 14-39(a)&(b).

Comparison of the foregoing with the prohibitions of the protective order reveals several elements contained within the statutory language, including confinement and a purpose to do serious bodily harm or to terrorize, not set out in the protective order. Defendant's prosecution for the crime of kidnapping thus was not barred by the

constitutional prohibition against double jeopardy. *See Yerby*, 679 A.2d at 221-22.

The statutory offense of non-felonious breaking or entering requires a wrongful breaking or entrance into a building. *See* N.C.G.S. § 14-54(b) (1993). However, the protective order required simply that defendant "stay away from the parties' residence," and did not include language pertaining to the breaking or entering of the residence. Again, defendant's conviction for breaking or entering was not barred by the Double Jeopardy Clause. *See Yerby*, 679 A.2d at 221-22.

Similarly, as to the offense of domestic criminal trespass, N.C.G.S. § 14-134.3 (1993), the order directed defendant to "stay away" from the marital residence, while the statute forbids a person from "enter[ing] after being forbidden to do so or remain[ing] . . . upon the premises occupied by a present or former spouse." G.S. § 14-134.3. The Double Jeopardy Clause thus did not prohibit defendant's prosecution on the charge of domestic criminal trespass. *See Yerby*, 679 A.2d at 221-22.

[2] In sum, the Double Jeopardy Clause did not constitute a bar to defendant's subsequent prosecution on charges of kidnapping, non-felonious breaking or entering, and domestic criminal trespass; however, defendant's conviction of assault on a female must be vacated. Further, a recent decision of our North Carolina Supreme Court requires that the non-vacated convictions be remanded for re-sentencing.

In *State v. Brown*, 350 N.C. 193, 513 S.E.2d 57 (1999), the defendant's conviction of solicitation to commit murder was vacated, but a conspiracy to commit murder conviction which the trial court had consolidated for sentencing with the solicitation charge was remanded, *id.* at 199, 213-14, 513 S.E.2d at 61, 70. The Court noted it could not "assume that the trial court's consideration of two offenses, as opposed to one, had no affect [sic] on the sentence imposed." *Id.* at 213, 513 S.E.2d at 70. While the case *sub judice* may be one "where, on remand, the trial judge will . . . reach the same result," *State v. Futrell*, 112 N.C. App. 651, 672, 436 S.E.2d 884, 895 (1993), absent consideration of the misdemeanor conviction we have vacated, this Court is bound by rulings of the North Carolina Supreme Court, *Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 621, 504 S.E.2d 102, 106 (1998).

No. 96 CRS 23155, assault on a female, vacated. Nos. 96 CRS 23151-23154, kidnapping, non-felonious breaking or entering, and domestic criminal trespass, no error; remanded for re-sentencing.

Judges TIMMONS-GOODSON and HUNTER concur.