STATE v. DYE

[139 N.C. App. 148 (2000)]

---

STATE OF NORTH CAROLINA v. REBECCA BAILEY DYE, DEFENDANT

No. COA98-1593

(Filed 18 July 2000)

**Constitutional Law— double jeopardy—domestic criminal trespass—criminal contempt**

The trial court erred by denying defendant's motion to dismiss the charge of domestic criminal trespass after she was already convicted of criminal contempt because: (1) the double jeopardy clause prohibits subsequent prosecution of a substantive criminal offense following an adjudication of criminal contempt based upon violation of a court order forbidding commission of acts constituting such substantive offense; and (2) the elements of the offense actually deemed to have been violated in the contempt proceeding, defendant's "coming to" the residence of her ex-husband in violation of a court order, met the essential legal elements of domestic criminal trespass under N.C.G.S. § 14-134.3(a).

Appeal by defendant from judgment entered 19 August 1998 by Judge Catherine C. Eagles in Guilford County Superior Court. Heard in the Court of Appeals 20 October 1999.

*Attorney General Michael F. Easley, by Associate Attorney General Mary Penny Thompson, for the State.*

*W. Steven Allen, for defendant-appellant.*

STATE v. DYE

[139 N.C. App. 148 (2000)]

JOHN, Judge.

Defendant appeals judgment entered upon conviction by a jury of domestic criminal trespass. We vacate the judgment.

The State's evidence at trial tended to show the following: Defendant and Carey James Dye (Mr. Dye) divorced 14 December 1987. The two entered into a 20 February 1995 civil consent order (the Order) providing in pertinent part that "[d]efendant shall not come to the residence of [Mr. Dye]."

On 24 July 1996, defendant knocked on the front door of Mr. Dye's residence. The door was opened by the couple's child, William Dye (William), who was living with Mr. Dye. William testified defendant began screaming and directing profanity against him, his father, and other family members. William related he "repeatedly" told defendant "she wasn't supposed to be there, [and] she needed to go away." When defendant failed to comply, William closed the door and telephoned the police and his father. As a result, on 26 July 1996, Mr. Dye filed a motion seeking that defendant be held in criminal contempt for violation of the Order.

On 10 May 1997, defendant again returned to Mr. Dye's residence, knocked on the door, and began screaming and cursing at William when he opened it. Based upon this occurrence, Mr. Dye filed a second contempt motion 21 May 1997. Both motions were heard 27 May 1997 in Guilford County District Court (the contempt proceeding). On 16 June 1997, the trial court ruled defendant had "violated the . . . Order of February 20, 1995 . . . [and wa]s in criminal contempt . . . for going to the residence of [Mr. Dye]." Defendant was committed to the Guilford County jail for 30 days.

In addition to his 21 May 1997 contempt motions, Mr. Dye also obtained a warrant charging defendant with domestic criminal trespass in connection with the 10 May 1997 incident. Defendant moved to dismiss 18 May 1998, which motion was denied by the trial court 8 July 1998. Defendant was convicted of the charge by a jury on 19 August 1998 and sentenced to 45 days imprisonment. Defendant appeals.

Defendant contends the trial court erred in denying her 18 May 1998 motion to dismiss, asserting prosecution of the criminal charge violated the "Fifth Amendment Double Jeopardy Clause." Based upon this Court's decision in *State v. Gilley*, 135 N.C. App. 519, 530, 522 S.E.2d 111, 118 (1999), we agree.

STATE v. DYE

[139 N.C. App. 148 (2000)]

It is well established that the Fifth Amendment to the United States Constitution (the Double Jeopardy Clause) protects against, *inter alia*, a "second prosecution for the same offense after [a prior] conviction," *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986), including a nonsummary criminal contempt adjudication, *United States v. Dixon*, 509 U.S. 688, 696, 125 L. Ed. 2d 556, 568 (1993), as occurred in the case *sub judice*.

In *Gilley*, this Court held that the Double Jeopardy Clause prohibits subsequent prosecution of a substantive criminal offense following an adjudication of criminal contempt based upon violation of a court order forbidding commission of acts constituting such substantive offense. *Gilley*, 135 N.C. App. at 529, 522 S.E.2d at 118. Guided by the majority opinion in *Dixon*, 509 U.S. at 696, 125 L. Ed. 2d at 568, we stated there must be a comparison of

> "the elements of the offense actually deemed to have been violated in th[e] contempt proceeding against the elements of the substantive criminal offense(s),"

*Gilley*, 135 N.C. App. at 527, 522 S.E.2d at 116 (quoting *Commonwealth v. Yerby*, 679 A.2d 217, 222 (Pa. 1996)), "rather than comparison of the general literal elements of contempt with elements of the subsequent substantive criminal offense," *id.* If the substantive elements of the offenses are the same, or if one is a lesser included offense of the other, double jeopardy attaches and the subsequent prosecution is barred. *State v. McAllister*, 138 N.C. App. 252, 255, 530 S.E.2d 859, (2000). Such "approach follows the position of at least five justices in *Dixon*, and best ensures protection of 'the core values of the Double Jeopardy Clause.'" *Gilley*, 135 N.C. App. at 527, 522 S.E.2d at 116 (quoting *Gardner*, 315 N.C. at 452, 340 S.E.2d at 707).

At the contempt proceeding, both motions filed by Mr. Dye were considered and the court set out the following pertinent findings of fact in its order:

> 9. On July 24, 1996, Defendant presented herself at the front door of [Mr. Dye's] residence and knocked on the door. The parties' child . . . who . . . lives at the residence with [Mr. Dye], gave evidence in open Court of Defendant screaming and cursing in a hysterical manner at the door of the residence on July 24, 1996.
>
> 10. On May 10, 1997, the minor child . . . also saw Defendant approach the residence where he and [Mr. Dye] live, knock upon

the door and begin screaming and using profanity against him and other members of his family.

The court thereupon adjudicated defendant as being in criminal contempt for "going to the residence" of Mr. Dye in violation of the Order.

At her subsequent jury trial on 19 August 1998, defendant was convicted of domestic criminal trespass based upon the 10 May 1997 incident. The issue thus becomes whether defendant's previous "conviction" in the criminal contempt proceeding barred her subsequent prosecution in the trial court.

We note initially that the instant record contains no transcript of the contempt proceeding, and the court's resultant 16 June 1997 contempt order recites only the conclusion that "[t]he defendant is in criminal contempt . . . for going to the residence of [Mr. Dye]." This determination followed detailed findings of fact relating to both the 24 July 1996 and the 10 May 1997 trespass, only the latter of which served as the offense date for the criminal trespasses charge.

Nonetheless, any ambiguity surrounding the trespass date serving as basis for the criminal contempt adjudication, in light of "the terseness of the contempt judgment," *Gilley*, 135 N.C. App. at 528, 522 S.E.2d at 117, "must be construed in favor of defendant," *id.; see Dixon*, 509 U.S. at 724, 125 L. Ed. 2d at 586 ("interests of the defendant are of paramount concern"), and *O'Briant v. O'Briant*, 313 N.C. 432, 435, 329 S.E.2d 370, 373 (1985) ("criminal contempts are crimes, and accordingly, the accused is entitled to the benefits of all constitutional safeguards"), and *see Gardner*, 315 N.C. at 451, 340 S.E.2d at 707 (ambiguous verdict construed in favor of defendant). We therefore must consider defendant to have been adjudicated in contempt based upon the 10 May 1997 incident which resulted in the domestic criminal trespass conviction.

Under N.C.G.S. § 14-134.3 (1993), the essential elements of domestic criminal trespass include:

enter[ing] after being forbidden to do so or remain[ing] after being ordered to leave by the lawful occupant, upon the premises occupied by a present or former spouse. . . .

G.S. § 14-134.3(a). The Order mandated that defendant "shall not come to" the residence of her former spouse, Mr. Dye.

In interpreting statutory language, "it is presumed the General Assembly intended the words it used to have the meaning they have in ordinary speech," *Nelson v. Battle Forest Friends Meeting*, 335 N.C. 133, 136, 436 S.E.2d 122, 124 (1993), and when the plain meaning is unambiguous, a court should go no further in interpreting the statute than its ordinary meaning, *id.* Giving the statutory element of "enter[ing] . . . upon" its ordinary meaning, *see id.*, we conclude that the statutory language is equivalent to the phrase "shall not come to" contained in the Consent Order.

We are cognizant of the holding in *Gilley* that:

> as to the offense of domestic criminal trespass, G.S. § 14-134.3, the [protective] order directed defendant to "stay away" from the marital residence, while the statute forbids a person from "enter[ing] . . . the premises occupied by a . . . former spouse."

Unlike the broad and general "stay away from" terminology rejected in *Gilley*, however, the phrase "shall not *come to* the residence" at issue herein, considered in terms of "ordinary speech," *Nelson*, 335 N.C. at 136, 436 S.E.2d at 124, is specifically akin to the statutory prohibition of "enter[ing]" upon forbidden premises.

"Enter" has been defined as:

> to go or come *into a material place*; to make a *physical entrance* or penetration; to pass *into the interior* of; ingress; to cause to be admitted; to come into or upon. . . .

Webster's Third New International Dictionary 756 (1966) (emphasis added). Similarly, "come" has been defined as "to move toward or enter; to approach or reach; to arrive at a particular place," *id.* at 453, "to present oneself," Black's Law Dictionary 242, and the term "to" has been construed as "movement toward; contact; close against," Webster's at 2401. On the other hand, "stay" has been defined as "to halt an advance; remain," *id.* at 2231, and the word "away" as "from this or that place," *id.* at 152.

Prohibitions against "enter[ing]" or "com[ing] to" a residence would therefore effectively be violated upon actual entrance onto or physical contact with designated premises. However, an order containing the directive to "stay away" from a residence might arguably be violated by travel on a public street passing in front of the residence, or entry into the neighborhood or even the town wherein the residence is located. By contrast, the prohibition forbidding one to

`"enter[]" or "come to" certain premises does not lend itself to such uncertainties, because the scope is expressly limited to a "physical entrance" upon the actual "material" premises. *See* Webster's at 756.

In short, we hold the phrase "shall not come to the residence" contained in the Order is equivalent to the domestic criminal trespass element of "enter[ing] . . . upon the premises," G.S. § 14-134.3(a), for purposes of double jeopardy. Accordingly, "the elements of the offense actually deemed to have been violated in th[e] contempt proceeding," *Yerby*, 679 A.2d at 222, *i.e.*, defendant's "coming to" the residence of Mr. Dye on 10 May 1997 in violation of the Order, meet the essential legal elements of domestic criminal trespass under G.S. § 14-134.3(a), *i.e.*, entering upon Mr. Dye's premises on 10 May 1997 after having been forbidden to do so. Under the circumstances of the instant case, therefore, the Double Jeopardy Clause constituted a bar to defendant's subsequent prosecution upon the domestic criminal trespass charge, *see Gardner*, 315 N.C. at 452, 340 S.E.2d at 707 (if substantive offenses are the "same . . . double jeopardy attaches and the subsequent prosecution is barred"), and her conviction must be vacated, *see Gilley*, 135 N.C. App. at 526, 522 S.E.2d at 115, and *Yerby*, 679 A.2d at 221.

In light of the foregoing, we decline to address defendant's remaining assignments of error.

Judgment vacated.

Judges LEWIS and McGEE concur.